George M. Kenyon et al., Respondents, v. Knights Templar and Masonic Mutual Aid Association, Appellant.

As a general rule the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity or is equivocal, and its interpretation depends upon the sense in which the words were used, in view of the subject to which they relate, the relation of the parties and the surrounding circumstances, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact.

Conditions inserted in a contract of insurance for the benefit of the company making it, may be waived by it.

Any agreement, declaration or course of action on the part of the company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.

An insurance certificate issued by defendant upon the life of K., provided that the application therefor should form part of the agreement, the statements therein be considered as warranties, and that if any statement should be untrue, or if any deception should be used by the applicant, the certificate should be null and void.   It appeared that in response to this question in the application: "Profession or occupation, state precise nature of business," the applicant answered: "Wholesale dealer in wines and liquors."   To another question as to whether he was "Engaged in any way in the retailing of alcoholic liquors" the applicant answered "No; keep no bar, and sell only at wholesale; have government license and town license."   In an action to recover the amount of insurance, it appeared that the insured kept a liquor store and sold alcoholic liquor by the barrel and in quantities less than five gallons, by measure; but kept no bar, and did not sell by the drink or to be drank on the premises; he had a license from the United States government and also a city, commonly known as a store license, which authorized him to sell in quantities less than five gallons, not, however, to be drank on the premises.   Defendant's agent,

who filled in the answers in the application, testified that he understood the answer of the applicant to be that he did not sell by the drink; that he knew he was selling by the measure. Defendant's counsel requested the court to charge the jury that the assured at the time the application was made, was engaged in retailing alcoholic liquors; that his answer to the question in that respect was not true, and he, therefore, could not recover. This request was refused, and the court submitted to the jury the question whether or not the answer was untrue. *Held*, no error; that the question as to the truthfulness of the answer was one of fact for the jury.

*It seems,* the cases in which knowledge of the agent, through whom insurance is taken, may operate to defeat the right of the company to avail itself of the fact so known, at the time it is taken, are those in which there is no application signed by the assured stating to the contrary of such existing fact, but rests upon a condition expressed in the policy merely; in which case it may be presumed that the statement of the fact in the policy as required by the condition was omitted by mistake, or waived. Such is not the rule when the alleged breach of warranty is founded upon a misstatement by the assured in his application.

The certificate also provided that if any assessment was not paid within ten days after proper notice, the certificate should cease and determine; there was indorsed upon it a by-law which provided that any member failing to pay his assessments within ten days after notice would forfeit his certificate of membership and all benefits therefrom; but that he might be reinstated within thirty days after notice, if alive, by paying all arrearages. On March 27, 1885, defendant's secretary mailed to the insured a notice that an assessment was due and payable on or before April sixth; it also stated that assessments were payable at defendant's office in cash, by sight draft or money order, payable to defendant's secretary. Plaintiffs proved that, on April 4, 1885, the insured sent by mail from W., where he resided, in time to reach its destination within the ten days, a check for the amount due, payable to the order of the defendant's secretary, this having been the manner in which he had uniformly and without objection made his previous payments, and although many of the previous checks were not received until after the expiration of the ten days, no question had been raised by defendant's secretary. On April tenth, said secretary wrote the insured that his assessment had not been paid, but that if living he could pay it any time before April twenty-seventh, and added "until such payment is made you are carrying your own risk in case of death," and that if the payment was not made in time he would forfeit the certificate; and added: "Remit by bank check." On April thirteenth K. replied, stating he had paid the assessment on April fourth, and before the secretary's reply reached him he died. A motion for a non-suit was denied. *Held*, no error; that from the course of dealing adopted by the defendant in respect to the payments, the assured might fairly

and in good faith have been led to suppose that defendant's requirement as to payments was satisfied by mailing the check

Reported below, 48 Hun, 278.

(Argued June 25, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 17, 1888, which affirmed a judgment in favor of plaintiffs entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action upon a policy or certificate of insurance issued by the defendant.

On May 22, 1882, the defendant, in consideration of $16 paid by Alexander M. Kenyon and of the representations made by his application for membership, and subject to the provisions of the by-laws indorsed upon it, delivered to him its insurance certificate, whereby it promised to pay to his heirs $5,000, or such portion thereof as is provided for in such by-laws. The certificate also provided that the application should form part of the agreement and the statements therein be a warranty of their truth, and that if any statement made therein should be untrue, or if any deception be used by him in obtaining the certificate, it should be null and void. The application was by him subscribed, and the portions of it requiring any consideration were the following questions and answers: " Profession or occupation. State precise nature of business. Importer and wholesale dealer in wines and liquors. Are the habits of said party at the present time, and have they always been sober and temperate? Yes. Does the party use intoxicating drinks habitually as a beverage? No. Is the person engaged in any way in the retailing of alcoholic liquors? No; keep no bar and sell only at wholesale; have government license and town license." In the application was added: " And I do hereby agree that the statements and representations contained in the foregoing application and declaration shall be the basis of the contract between me and the said association, the truthfulness of which statements and representations I do hereby warrant; and that if the same

or any of them are in any material respect untrue, or if there shall be any omission or neglect to pay any of the assessments on or before the days on which said assessments shall fall due, except as provided for in the days of grace by the by-laws of this association, that then and in either event the certificate of membership which may be issued hereon shall be void * * * and inasmuch as only the officers at the home office of the association, in the city of Cincinnati, have authority to determine whether or not a certificate of membership shall issue on any application, and as they act on the written statements and representations referred to, it is expressly understood and agreed that no statements, representations or information made or given by or to the person soliciting or taking this application for a certificate of membership, or to any other person, shall be binding on the association, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the association at the home office, in the above application." The insured died on the night of April 15, 1885.

Further facts appear in the opinion.

*John Lansing* for appellant.     By neglect to pay the assessment within the ten days given for that purpose, the said Alexander M. Kenyon ceased to be a member of the association, and entitled to any rights under his certificate of membership.  (*McDonald* v. *Lewin*, 29 Hun, 87–91.)  The sending of the check to the defendant by Alexander M. Kenyon was not payment of the assessment.  (*Turner* v. *Bank of Fox Lake*, 23 How. Pr. 399 ; 4 Abb. Ct. App. Dec. 434 ; 3 Keyes, 425 ; *Smith* v. *Marshall*, 17 Johns. 340 ; *Olcott* v. *Rathburn*, 5 Wend. 490 ; *Bradford* v. *Fox*, 38 N. Y. 289 ; *S. B. & N. Y. R. R. Co.* v. *Collins*, 3 Lans. 29 ; *Sweet* v. *Titus*, 67 Barb. 327.)  There was no waiver by the defendant of a strict compliance with the terms of the certificate of membership and the by-laws of the defendant, which required payment of the assessment at the office of the association in Cincinnati, within ten days from the service of notice of such assessment by mail.

(2 Daniels on Neg. Inst. 415.) The answer to the question "Is the person engaged in any way in the retailing of alcoholic liquors?" contained in the application was untrue and rendered the certificate void. (*Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341, 350; *Ripley* v. *A. Ins. Co.*, 30 id. 136; 2 Greenl. on Ev. 116, §§ 1–3; 1 R. L. of 1801, 484, §§ 1–4; 1 R. L. of 1813, 176, §§ 1–4; 1 R. S. 678, §§ 4, 12, 15; Laws of 1857, chap. 628, §§ 2, 11, 13; Laws of 1870, chap. 175, § 4; Laws of 1873, chap. 549, § 4; *Farman* v. *Knapp*, 19 Johns. 248; *Trustees, etc.*, v. *Keeting*, 4 Den. 341; *Foote* v. *People*, 56 N. Y. 321, 323; *People* v. *Smith*, 69 id. 175, 180; U. S. R. S. §§ 3223, 3244; *O'Brien* v. *H. B. Society*, 117 N. Y. 310–318; *Chase* v. *H. Ins. Co.*, 20 id. 52, 55; *Alexander* v. *G. F. Ins. Co.*, 66 id. 464, 467; *Baker* v. *H. L. Ins. Co.*, 2 Hun, 402; 64 N. Y. 648; *Foot* v. *A. L. Ins. Co.*, 61 id. 571; *Barteau* v. *P. M. L. Ins. Co.*, 67 id. 595.)

*Levi H. Brown* for respondent. This court cannot, on this appeal, review any question of fact arising upon conflicting evidence or inference deducible therefrom. (*S. Co.* v. *Mayor, etc.*, 109 N. Y. 621.) The denial of the defendant's motion for a nonsuit was correct. (*Van Valkenburg* v. *Ins. Co.*, 70 N. Y. 605; *Baxter* v. *B. Ins. Co.*, 44 Hun, 184.) The truth of the answers to the questions contained in the application was submitted to the jury, and its verdict is conclusive. (*Boos* v. *W. M. F. Ins. Co.*, 64 N. Y. 236–241; *Van Valkenburgh* v. *A. P. L. Ins. Co.*, 70 id. 605; May on Ins. § 299; *McGinley* v. *U. S. L. Ins. Co.*, 8 Daly, 390; 77 N. Y. 495; *Ins. Co.* v. *Foley*, 105 U. S. 350; *N. W. M. L. Ins. Co.* v. *M. N. Bank*, 36 Alb. L. J. 55; *A. L. Ins. Co.* v. *Dewey*, 37 id. 140; *Miller* v. *P. L. I. Co.*, 107 id. 292–296; *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Ins. Co.* v. *Mahone*, 21 id. 152; *O'Brien* v. *H. B. Society*, 117 N. Y. 310; *Mowrey* v. *Rosendale*, 74 id. 360–363; 3 R. S. [7th ed.] 1977, 1991; Laws of 1857, chap. 628; *Dunbar* v. *P. Ins. Co.*, 39 Alb. L. J. 117; Wood on Ins. 308, § 161; *Dohn* v. *F. J. S. Ins. Co.*, 5 Lans. 275; *Ames* v. *N. Y. U. Ins. Co.*, 4 Kern. 253, 263; *Bidwell*

v. *N. W. Ins. Co.*, 24 N. Y. 302; *Bowman* v. *A. Ins. Co.*, 59 id. 521; *Kepler* v. *S. L. K. of Honor*, 45 Hun, 274–278; *Potter* v. *O. L. M. Ins. Co.*, 5 Hill, 147–150; *Rawls* v. *Ins. Co.*, 27 N. Y. 282, 295, 297; *Dilliber* v. *H. L. Co.*, 69 id. 256–262; *Edington* v. *M. L. Ins. Co.*, 67 id. 185, 197; *Gates* v. *M. C. Ins. Co.*, 2 id. 43, 44–47; 8 Daly, 393; 77 N. Y. 495; *Fitch* v. *Ins. Co.*, 59 id. 557, 573; *Westlake* v. *S. L. C. M. Ins. Co.*, 14 Barb. 206; *Hoffman* v. *A. F. Ins. Co.*, 32 N. Y. 405–413; *Wright* v. *Williams*, 20 Hun, 320–323; *Baley* v. *H. F. Ins. Co.*, 80 id. 21–23; *Burleigh* v. *G. F. Ins. Co.*, 90 id. 220; *Griffey* v. *N. Y. C. Ins. Co.*, 100 id. 417; *Smith* v. *Clews*, 39 Alb. L. J. 479; *Collender* v. *Dinsmore*, 55 id. 200–206; *Dwight* v. *Ins. Co.*, 103 id. 347; *White* v. *Hoyt*, 73 id. 505–511; *Grattan* v. *M. L. Ins. Co.*, 80 id. 281; *Whited* v. *G. F. Ins. Co.*, 76 id. 415–419; *Baker* v. *H. Ins. Co.*, 64 id. 648.) The charge of the court was more favorable to defendant than it was entitled to have, especially as to the acts of agent Bolles. (*Mowry* v. *Rosendale*, 74 N. Y. 360; *Miller* v. *Ins. Co.*, 107 id. 296; *O'Brien* v. *H. B. Soc.*, 117 id. 310–314; *Vanderhoof* v. *A. Ins. Co.*, 46 Hun, 328, 334; 106 N. Y. 243–249; 81 id. 273–276; 68 id. 438; *Fitch* v. *A. P. L. Ins. Co.*, 59 id. 557; 61 id. 575; 63 id. 408; 18 id. 378; *Newell* v. *Bartlett*, 114 id. 309–405; 77 id. 495.) Defendant cannot have or sustain any claim of forfeiture by reason of the notice it served. (*Baxter* v. *B. L. Ins. Co.*, 44 Hun, 184; *Carter* v. *Ins. Co.*, 110 N. Y. 15; *Phelan* v. *N. W. M. L. Ins. Co.*, 113 id. 147.) The denial of the motion for nonsuit, and of the request to direct a verdict for defendant on ground of the non-payment of the fifty-ninth assessment was correct. (Chitty on Bills, chap. 7; *Mitchell* v. *V. C. M. Co.*, 67 N. Y. 280; *Duffy* v. *Dorman*, 46 id. 623; *Becker* v. *Boon*, 62 id. 317, 320; 112 id. 627; *Atty.-Gen.* v. *C. L. Ins. Co.*, 33 Hun, 138; *Meyer* v. *K. L. Ins. Co.*, 73 N. Y. 516, 526–528; *Dean* v. *A. Co.*, 62 id. 642; *Ins. Co.* v. *Eggleston*, 96 U. S. 572; *P. Ins. Co.* v. *Doster*, 106 id. 30; *Palmer* v. *Ins. Co.*, 84 N. Y. 63–71; *Homer* v. *Ins. Co.*, 67 id. 478; *Wyman* v. *P. Ins. Co.*, 23 N. E. Rep. 907; *Phelan* v. *Ins.*

*Co.,* 113 N. Y. 151 ; *Craighton* v. *A. Ins. Co.,* 39 Hun, 319 ; *Goodwin* v. *M. M. L. Ins. Co.,* 73 N. Y. 480 ; *Randall* v. *Ins. Co.,* 77 id. 480, 488, 489 ; *W. T. M. Co.* v. *Ins. Co.,* 66 id. 613 ; Wood on Ins. §§ 28, 367, 496, 497 ; *Ins. Co.* v. *Wolf,* 95 U. S. 326, 330 ; *Dillebar* v. *Ins. Co.,* 76 id. 567 ; *Andrews* v. *Ins. Co.,* 92 id. 596, 603 ; *Ins. Co.* v. *Norton,* 96 U. S. 234, 241 ; *Titus* v. *Ins. Co.,* 81 N. Y. 410 ; 84 id. 64–71 ; *Wright* v. *M. B. L. Assn.,* 118 id. 237.)    The court did not err in submitting to the jury either of the matters before noticed upon the writings in connection with the facts and circumstances *aliunde* instead of ruling thereon as law.    (*Bank* v. *Dana,* 79 N. Y. 108–116 ; *Pitney* v. *Ins. Co.,* 65 id. 6, 14–18 ; *Barreda* v. *Silsbee,* 21 How. [U. S.] 146–168 ; *Pence* v. *Langdon,* 99 U. S. 578–580 ; *Smith* v. *Coe,* 55 N. Y. 678 ; *Martin* v. *Cope,* 28 id. 180 ; *Foster* v. *Cadwell,* 18 Vt. 176– 181 ; *Wyman* v. *P. Ins. Co.,* 23 N. E. Rep. 907 ; *The Distilled Spirits,* 11 Wall. 356, 367 ; Wood on Ins. §§ 386–402 ; *Ingalls* v. *Morgan,* 10 N. Y. 178.)    The making entries on the stub was *res gœsta.*    (*Beaver* v. *Taylor,* 1 Wall. 637– 642 ; *Guy* v. *Mead,* 22 N. Y. 462 ; *Brewster* v. *Doans,* 2 Hill, 537 ; 13 Hun, 219 ; *Merrill* v. *R. R. Co.,* 16 Wend. 586–595.)

BRADLEY, J.    The defense is founded upon the charge that Kenyon, in his application for membership of the defendant, untruly answered some of the questions put to him, and that he ceased before his death to be a member by his failure to pay an assessment as required by the contract of insurance. He undertook that the statements he was called upon to make, and which were contained in his application, should be substantially true.    This was part of the contract, and if they or any of them were untrue, there was a breach of the warranty, which rendered the certificate void.    The defendant alleged that his statements that his habits were and had always been sober and temperate, and that he did not habitually use intoxicating drinks as a beverage were untrue.    The evidence was not such as to require the conclusion that this charge was sup-

ported, and the jury were authorized to find, as it must be assumed they did, that those statements made by the applicant were substantially true. In the application was also the question : "Is the person engaged in any way in the retailing of alcoholic liquors?" To which was written the answer : "No ; keep no bar, and sell only at wholesale ; have government license and town license." Kenyon's place of residence and business was the city of Watertown, N. Y. He kept a liquor store and sold alcoholic liquor by the barrel and in various quantities less than five gallons by measure, but he kept no bar, and it was not his business to sell by the drink or to be drank on the premises. He had a license from the United States government ; also one from the board of excise of the city. The latter is commonly known as a store license. The defendant's counsel requested the court to charge the jury that the assured, at the time the application was made, was engaged in retailing alcoholic liquors ; that his answer to the question in that respect was not truthful, and for that reason the plaintiffs could not recover. The court declined to so charge, and exception was taken. And the court left to the jury the question whether or not such answer of the assured was untrue, to which the defendant's counsel also excepted.

The question, therefore, arises whether or not it was for the court to determine the interpretation to be given to the statement so written in the application, and to hold as matter of law that it was untrue and constituted a breach of warranty. It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact. ( *White* v. *Hoyt*, 73 N. Y. 505 ; *Dwight* v. *G. L. Ins. Co.*, 103 id. 341.) The inter-

rogatory which the assured was called upon to answer was, in its terms and apparent purpose, definite. If the parties understood alike the meaning of the term "retailing of alcoholic liquors," there was no difficulty in giving the definite answer of yes or no. But for some reason the answer proceeded further and added to "no" that he kept no bar, by which he may have intended to be understood that he did not sell by the drink, and, therefore, did not sell at retail, and sold only at wholesale, and that to enable him to do so he had both a government license and a town license. The former one referred to was permission he had from the authority of the United States, pursuant to act of congress providing for internal revenue, to sell at wholesale, or, as for the purposes of such act there defined, in quantities not less than five gallons, while the other may be understood to have been a storekeeper's license from the local board of excise, permitting him to sell in quantities less than five gallons, not, however, to be drank on the premises. The question is whether the words of the answer as so written in the application did, in view of the subject to which it was directed, furnish any rational doubt or uncertainty as to the manner the assured was conducting his liquor trade business, or as to what was intended to be represented in that respect by such answer. Amongst the objects of the defendant in framing interrogatories to be answered by applicants for membership, was that to ascertain the character of the business in which they were engaged, and one of them called upon Kenyon to "State precise nature of business" which constituted his profession or occupation, to which he answered: "Importer and wholesale dealer in wines and liquors." And in the certificate issued to him he is described as a wholesale liquor dealer. This was true. He was engaged in that business. But the later inquiry in the same application drew upon him for the further information, whether his business in that traffic was confined to the wholesale trade. To ascertain the import of the answer it is to be considered as a whole. The insertion in it of the statement that he kept no bar, and that he had not only a government

or wholesale license, but a store license which enabled him to sell in small quantities, may have been intended as explanatory of the other portions of the answer, and to indicate the import, as he understood it, of the terms wholesale and retail. What then was the interpretation of which this combination of words was susceptible ; and what was the meaning, so far as appears, by them which it may be said the assured intended the answer should have ? He evidently intended to be understood that he was not engaged in dealing out liquors by the drink, or to be drank at his store. And assuming that the answer was made in good faith, the reference to the fact that he had a license which enabled him to sell in quantities less than five gallons not to be drank there, may have been intended by him to characterize to that extent the manner in which he was carrying on his business of selling liquors. No other purpose of it is apparent. And in that view there is within the import of the words the intention of the assured to be understood that his sales were at wholesale and not at retail because he was not selling by the drink, although he was selling in small quantities by measure. Whatever view the defendant may have entertained of the meaning of the words wholesale and retail as applied to the sale of alcoholic liquors, if the applicant had stated that he was selling in the former manner only, and added he was selling in small quantities, such as by the quart and pint, by measure, not to be drank on his premises, it could not well be asserted by the defendant that in view of the facts as they appeared on the trial, the court should hold that the answer was substantially untrue, and that by it the applicant was chargeable with breach of warranty. Treating them, as they were susceptible of being treated, some of the words used in the answer of the applicant, as explanatory of others, the import of it was not upon such a state of facts necessarily untrue in the sense requisite to constitute breach of warranty. It seems that the interpretation of such answer in itself as a whole was not entirely free from doubt or obscurity, and by reference to the circumstances attending the preparation of the application, it appears that this and the other answers

to its interrogatories, which were presented in a printed blank, were inserted by the defendant's soliciting agent, who as a witness stated as his impression that he first wrote "yes" which was erased and the word "no" put in its place, that it was done by him on some explanation, made to the effect that the applicant was selling by measure, pint, quart, etc. That on the same occasion he saw sales made there by the bottle; that as he understood it, Kenyon was a wholesale dealer from the fact that he was not selling by the drink, and the witness added: "I didn't mean by putting down the word in. the application 'wholesale' that he didn't sell any small quantities by the measure, because I saw him selling liquor there by the measure; I meant by putting in the word 'wholesale' that he didn't sell by the drink; that is the construction I put upon it; that was the distinction I meant with such men as liquor dealers generally. I supposed it was that at the time, and don't know the difference now. I understood he had two licenses, one was a government license from the United States. The principal distinction I had in view was selling over the bar, or selling by the drink. I knew he was selling by measure." The mere fact that the agent had knowledge or information of the manner the assured was then selling liquors, did not necessarily affect the right of the defendant to assert and make available the defense that there was a breach of warranty, if the answer was untrue. That was provided against by a provision in the contract. (*Chase* v. *H. Ins. Co.*, 20 N. Y. 52; *Barteau* v. *P. M. L. Ins. Co.*, 67 id. 595; *Foot* v. *A. L. Ins. Co.*, 61 id. 571.) The cases in which knowledge of the agent through whom insurance is taken, may operate to defeat the right of the company to avail itself of the fact so known, at the time it is taken, are those in which there is no application signed by the assured stating to the contrary of such existing fact, but rests upon a condition expressed in the policy merely. Then it may be presumed that the statement of it in the policy as required by the condition was omitted by mistake or waived. (*Bennett* v. *N. B. & M. Ins. Co.*, 81 N. Y. 273; *Short* v. *H. Ins. Co.*, 90 id.

16.)  Such is not understood to be the rule when the alleged breach of warranty is founded upon a misstatement by the assured in the application made and subscribed by him. (*Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 440; *Woodruff* v. *I. F. Ins. Co.*, 83 id. 140, 141.)  In the case at bar, upon the question now under consideration, what occurred at the time the application was made is not mentioned to give any importance to the fact that the agent had knowledge of the manner the applicant was conducting his business.  But inasmuch as the words, taken together, of his statement upon the subject expressed in the application, are in their import somewhat equivocal, reference may be had to the light furnished by the surrounding circumstances, with a view to ascertain the sense in which they were used, so far as it may be applicable to them, and in aid of their interpretation.  (*French* v. *Carhart*, 1 N. Y. 96; *Field* v. *Munson*, 47 id. 221; *Bridger* v. *Pierson*, 45 id. 501.)

The defendant, by issuing the certificate, accepted this statement in the application and put it into the contract, subject as it was to the interpretation arising from its equivocal character apparent upon its face, and dependent upon the intent with which the words were used not inconsistent with their application to the subject to which they related.  And in that view the conclusion was warranted that the party intended to be understood by the statement that he was selling by measure under his local license, and that none other than sales by the drink were treated by him as at retail.  It, therefore, seems that under proper instructions from the court, the question was one of fact for the jury.  (*White* v. *Hoyt*, 73 N. Y. 505.)  And there was no error in the refusal of the court to charge as requested, or in submitting the question upon that subject to the jury.

The further question upon the merits is whether the jury were by the evidence permitted to find that the certificate of insurance was in force at the time of the death of the member.

It is urged by the defense that the contract had terminated, and the right of the plaintiffs to assert any claim against the

defendant upon it, forfeited by reason of the default of Kenyon in making payment of an assessment as required by it. The certificate contained the provision that if any assessment should not be paid within ten days after notice provided by the by-laws for its payment, at the office of the defendant in the city of Cincinnati, Ohio (unless otherwise expressly agreed in writing), or to its agent on production of a receipt signed by the president, vice-president or secretary, the certificate should cease and determine. And by a by-law indorsed upon the certificate, it was also provided that " any member failing to pay his assessment within ten days after such notice has been served upon him, shall forfeit his certificate of membership in the association and all benefits therefrom. Any member having forfeited his membership by failing to pay his assessments, may be reinstated, he being alive, within thirty days after said notice was sent, he paying all arrearages." And that such notice might be sent by mail, and when so sent should be deemed a sufficient notice for the payment of the assessment required. This, with what appears in the application upon the subject, was the contract between the parties in that respect, and as such effectual to govern their rights, except so far as it may have in some manner been modified or strict compliance with such provisions waived. On March 27, 1885, the secretary of the defendant at Cincinnati mailed, addressed to Kenyon at Watertown, N. Y., a notice that an assessment of $4.75 on his certificate was then due and payable on or before April 6, 1885, and added : " Assessments are payable at this office in cash, by sight draft on Cincinnati or New York banks, money order or American or United States Express Company money order, payable to Charles Brown, secretary," and that the receipt was held at the defendant's home office, where he could get it, until April sixth inclusive, on payment of the amount, and where he could pay it after that date. The default alleged was in the payment of that assessment. This the plaintiffs seek to meet by the fact, which the evidence on their part tended to prove, that the member on April 4, 1885, sent by mail from Watertown his check, drawn upon a

bank there for the amount, to the defendant's secretary at Cincinnati, payable to the order of the latter. It was sent sufficiently early to reach, by due course, its place of destination within the ten days mentioned in the notice, but it was not received by the defendant's secretary; and if it had reached him within that time, he would not have been required to accept it in performance of the contract as represented by its terms before mentioned. But the course of dealing between the parties had been such that the member was at liberty to assume that his check upon the bank was receivable by the defendant, because it had uniformly and without objection received his checks in payment for assessments upon the certificate. So far the defendant had waived strict performance and permitted the member to pay in his checks as a substitute for the method of payment mentioned in the notice. It appeared that within a little more than a year and a half preceding the time of this assessment, Kenyon had sent to the secretary fifteen checks, drawn by him as this was and upon the same bank at Watertown, in payment of assessments, and that they were so received. But it is contended that the receipt at the home office of the defendant of that which the assured was permitted to deliver in payment, was essential to accomplish it. That is the rule when nothing appears to the contrary. (*Ins. Co.* v. *Davis*, 95 U. S. 425.) And such was the effect of the contract in question and, as we have seen, not modified by the terms of the notice of assessment. The method of doing it through the mail had been adopted by the assured. And although many of the checks before sent in that manner were not received, nor were some of them sent until after the expiration of the ten days following the notice, no question had been raised. If that can be treated as waiver of prompt payment, it is entitled to consideration. But it is with much force suggested that payment within thirty days after notice was the right of the assured, and when so made would operate to reinstate his relation of membership, which had been terminated by his default in payment during the first ten days, and, therefore, furnished no evidence

of any indulgence by the defendant or extension of the time for payment. It is difficult to see any waiver of payment within the time and at the place provided for by the contract, unless the circumstances were such as to permit the assured to understand, from the action of or the course of dealing with the defendant, that the deposit of the check, properly indorsed and directed, in the mail in due time, was a compliance with its requirement to save him from default and his contract of insurance from forfeiture, or unless what occurred by way of correspondence between him and the defendant after he had so mailed the check, may have been treated as such waiver. By reference to which this appears: On April tenth the secretary wrote Kenyon saying that his assessment payable on or before April sixth was yet unpaid; that he could pay it, if living, any time before April twenty-seventh. "Until such payment is made you are carrying your own risk in case of death," and after expressing the wish that Kenyon remain a member of the association, and saying that if the assessment was not paid within that time he would forfeit the certificate, added: "Remit by bank check, postal order, or American Express Company order." In a letter of date thirteenth April, to the secretary, Kenyon stated that he had paid the assessment April fourth, and before the secretary's letter in reply reached its destination Kenyon had died. These letters do not, of themselves, furnish evidence of purpose of the defendant to waive the payment not made within the ten days. It called the assured's attention to the right the contract gave him, and recognized his right to pay by bank check. Further consideration is due to the effect of the prior transactions between the parties in relation to the assessments and the manner of paying them, upon the rights of the parties, arising out of the notice and attempted remittance in question. The conditions inserted in a contract of insurance for the benefit of the company making it, may be waived by it. And in *Insurance Co. v. Eggleston* (96 U. S. 572), it was said by the court: "That forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate

an election to waive a forfeiture or an agreement to do so on which the party has relied and acted.    Any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." And substantially to the same effect are *Meyer* v. *Knickerbocker Life Ins. Co.* (73 N. Y. 516); *Wyman* v. *Phœnix Mutual Life Ins. Co.* (119 id. 274); *Helme* v. *Philadelphia Life Ins. Co.* (61 Penn. St. 107).

If the check had been mailed addressed to the secretary by the direction of the defendant, the member would not have been in default, although it was not received, assuming, as we may, that he had the funds in the bank to meet it.    (*Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63.)    There was no express agreement or direction to that effect.    And that method of remittance was for all purposes at his risk, unless the course of dealing with the defendant enabled him to believe and understand that the mailing of it would be effectual to protect him against forfeiture.    (2 Greenl. on Ev. § 525; *Gurney* v. *Howe*, 9 Gray, 404; *Crane* v. *Pratt*, 12 id. 348; *Morgan* v. *Richardson*, 13 Allen, 410.)

The distance between the place of residence of the assured and the defendant's home office was such that a payment of assessments by his personal delivery at the latter place evidently was not contemplated, and so far as appears the defendant was satisfied with the method of remittance from him directly to its officer by mail; and such means of transmission may have been within the expectation of the parties in view of their situation.    And doing it through the postal service might very well be deemed no less safe and appropriate than any other manner to make payments by means of bank checks.    (*Buel* v. *Chapin*, 99 Mass. 594.)    As this had been uniformly the manner of transmitting and accepting payment or the means of payment of assessments adopted by the parties, it may be

said that the postal medium of transmission had in some sense become a matter of usage between them, having the nature of an implied agreement to that effect. In that view it is not essential for the purpose of the question that the mailing or reception of the check should constitute actual payment, or that it should have operated as such during the life of the assured. (*Maher* v. *H. Ins. Co.*, 67 N. Y. 283.) The parties apparently had acquiesced in that method of representing the amount as well as in the means of transmission. And the conclusion was warranted that by the course of dealing by the defendant in that respect, the assured may fairly and in good faith have been led to suppose that the requirement of the defendant upon him, was satisfied by mailing as he did in his customary manner of doing it, the check for the amount of the last assessment. The proposition was not necessarily overcome by the fact that the other checks were received prior to the time the assured had the right to make payment, although that properly may have been a matter of consideration by the jury upon the question submitted to them. If these views are correct, the jury were permitted by the evidence to find the facts essential to the validity of the insurance certificate at the time of the death of the assured. And it follows that the motion for nonsuit was properly denied, and that there was no error in the submission of the case to the jury. In the other rulings to which exceptions were taken, there was no error to the prejudice of the defendant.

The judgment should be affirmed.

All concur, except FOLLETT, Ch. J., not sitting.

Judgment affirmed.