the remainder among his children as she should deem proper. There was no power of sale in this will, and no indication that the testator intended that his real estate should be disposed of during the life of his wife and the proceeds used for her support. Assuming that my construction of this will is not correct, however, I agree with Mr. Justice CLARKE that the defendant should not be compelled to take the title, and therefore concur with him in a direction of judgment for the defendant.

(110 App. Div. 456)

SCHOELLER et al. v. GRAND LODGE, A. O. U. W. OF STATE OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. January 3, 1906.)

1. INSURANCE—ASSESSMENTS—SUFFICIENCY OF PAYMENT.

A financier of a local lodge of a beneficial association to accommodate members, received assessments at his home, and on the night of the last day fixed for payment of an assessment a son of a member called at the financier's home to make payment, but was unable to do so because no one was there. Though it was customary for the financier to receive assessments for a few days after the last day for payment, no other tender was made; and failure to pay an assessment on or before the last day fixed under the laws of the order terminated membership ipso facto. *Held*, that the member was suspended for failure to pay the assessment.

2. SAME—WAIVER OF FORFEITURE.

Where the constitution of a beneficial association prohibited any officer from waiving any provision of its laws, and after the death of a member, who had in fact forfeited his membership by failure to pay an assessment, the recorder of his lodge mailed a notice of death to the grand body, containing a statement that the member died while a member "in good standing," the recorder believing that there had been no forfeiture, there was no waiver of the right of the order to claim a forfeiture.

Appeal from Trial Term, Monroe County.

Action by Frieda Schoeller, as guardian ad litem, and others, against the Grand Lodge of the Ancient Order of United Workmen of the State of New York. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Augustus Morris, for appellant.
H. G. Pierce, for respondents.

SPRING, J. The defendant is a benevolent insurance order formed upon the assessment plan, operating through subordinate or local lodges. George W. Schoeller obtained a benefit certificate through one of the defendant's lodges in Rochester in 1880, insuring his life in the sum of $2,000, payable one-half to his wife and one-half to his daughter Emilie Schoeller, and continued in good standing in the order until a short time before his death, which occurred August 23, 1903. He died intestate, leaving children, the plaintiffs, but his wife died before him. The intestate was a member of Bleucher Lodge in the city of Rochester. The method of providing assessments was by a call or notice published in the newspaper organ of the defendant in Buffalo on the 1st of each month and mailing a copy of the paper to each member.

The assessment was required to be paid by the 10th of the month succeeding its levy. Assessment No. 7 was called July 1st, and must, therefore, be paid by August 10th. Failure to make the payment within the specified period ipso facto suspended the member and terminated his membership in the order, subject to the right of restoration, which will be adverted to later. On August 1st another levy was made, which must be paid as early as September 10th following. There does not seem to be any provision in the defendant's constitution prescribing the mode of paying assessments by the members of the local lodge. The payments must be made by the 10th of the month, and must reach the defendant Grand Lodge at Buffalo by the 20th of the same month.

The usual mode of payment by the members of Bleucher Lodge, to which Schoeller belonged, was to pay at the lodge meetings, of which there were two each month. Mr. Lomb was the financier of the lodge, and was the official to whom payments were made. For the accommodation of the members he announced in the lodge meeting that he would receive payments at his house, 26 Clifford street. The practice was somewhat general for the members, in pursuance of this privilege, to pay their assessments at the house of this official, and usually in the evening or Sundays. Mr. Lomb was foreman in a shop, and was at his place of business during the day and often in the evening. The son of the insured Schoeller testified that on the evening of August 10th his father gave him $5 and told him to go to the residence of Mr. Lomb and pay his assessment. The young man testified that at about 8 o'clock on the evening of the 10th he went to the house of Mr. Lomb, rang the doorbell, and knocked, but no one responded. He returned home, and gave the money to his father. The evidence shows that Mr. Lomb was working at his shop that evening, as he had been doing for some time. No other attempt was made by Mr. Schoeller to pay this assessment, and on the 18th he was taken sick, and died five days later.

We cannot assent to the conclusion reached by the referee that this attempt to pay was equivalent to an actual payment and prevented the suspension of Mr. Schoeller. The primary duty cast upon the insured was to pay his premiums or assessments as they matured. For the convenience of the members, who, as we may assume from the title of the company and from other circumstances, were largely composed of workingmen, the financier permitted payments to be made at his home. This permission did not imply that the official was to be present at all times to receive money from these members. They evidently knew that he was a workingman engaged in his service at the shop. When home he was willing that the members should pay him there, if any accommodation to them. In construing this permission, we must bear in mind that it was solely for the advantage of the members, and if one called to make a payment, and the official was not at home, the mere effort in good faith did not constitute a payment. If the contrary interpretation prevailed, the order would soon dissolve. A different question might possibly be presented had Mr. Schoeller offered the money on the subsequent day, advising the financier of the endeavor to reach him on the evening of the 10th. There were two lodge meetings each month, and the one succeeding this unavailing effort to pay the assessment was

held August 14th. In case a member is suspended for nonpayment and desires to be reinstated, he is only obliged to present an application therefor, and, if not more than 30 days have elapsed, simply paying the assessments due entitles him to restoration. Schoeller had been a member for over 20 years, and undoubtedly knew of this easy manner to terminate his suspension and be replaced in membership, and knew also of the lodge meeting when this application could be made. He was then in full health, and his restoration rested entirely with him.

Again, Mr. Lomb, for the convenience of the members, was accustomed to receive payment of the assessments for several days after the 10th; the aim being to get the money ready to send to the defendant for the 20th. These privileges afforded abundant opportunity for a tardy member to make his payment and prevent any forfeiture of his certificate. The order is a fraternal one, and the interests of the members are mutual to work together for their common good and for the perpetuation of the scheme of insurance designed by its charter or constitution. This aim cannot be accomplished if the fruitless eleventh-hour attempt at payment, described by the son Schoeller, is to be a fulfillment of the duty imposed upon the member to pay his assessment.

On the 20th the report of Bleucher Lodge was received by the defendant, and it showed that Schoeller was among those suspended for failure to pay the assessment due August 10th, and the fact of his suspension was published in the paper of the order. The recorder of Bleucher Lodge, after the death of Schoeller, mailed the usual notice of his death to the defendant, containing the statement that the insured died "while a member in good standing." The notice bears date August 23d, but in truth was prepared and mailed on the 24th. The local recorder knew of the alleged attempted payment to the financier, and assumed that the effort was effective to bar forfeiture of the certificate. The action of this subordinate officer is not tantamount to a waiver of the claim of the defendant. The constitution of the defendant is explicit in prohibiting any officer, either of the grand or subordinate lodge, from waiving any provision of its laws. The act in any event was subsequent to the death of Schoeller, and his failure to pay had resulted in his suspension, and whatever the report returned to the defendant may have contained, it did not excuse the omission or reinstall the dead member in the order in good standing. The authorities cited by the counsel for the respondents do not relieve them from the dilemma in which they are placed by the unfortunate failure of the holder of the certificate to pay his matured assessment. In Kenyon et al. v. K. T. & M. M. A., 122 N. Y. 247, 25 N. E. 299, the assessment was due April 6th. On the 4th the insured mailed at Watertown, in this state, to the proper officer at Cincinnati, a check for the correct amount. There was ample time for this check to reach defendant's office by the usual course of mail before the allotted time expired. In fact it was not received by the defendant at all. The court held that ordinarily the mailing of the check would not constitute a payment, but this course of dealing had been recognized by the defendant, and it was the method of transmission quite uniformly adopted, and consequently was effectual to prevent forfeiture of the certificate. In

Knights of Pythias v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762, a member made his payment promptly, but the secretary of the subordinate section omitted to remit to the board of control on time, and his offending was sought to be charged to the member. The court held that the Supreme Lodge had assumed to control the secretary, and he was its representative, and not the agent of the member, although there was a provision in its laws to the contrary effect. Likewise, in Hartford Life Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496, the due day of premiums had been extended by the acquiescence of the company, and strict compliance with the conditions pertaining to payment had been disregarded, and a waiver was held to exist. These cases all proceed upon the well-settled rule depending upon the recognized departure of the strict terms of the contract. After acquiescing in a certain course of dealing, the company will not be heard to insist upon a rigid compliance when that construction will operate to forfeit the policy.

In the present case there was no element of a waiver and no feature of an estoppel. Schoeller, for his own convenience, endeavored to make the payment of assessment No. 7. He knew it was not paid, for the money was returned to him. He made no further attempt whatever. The financier of the defendant was not informed of the effort to pay. The insured also knew the fact that prior to the maturing of this assessment there had been a stiff advance in the rates to be charged the members of the order. It is quite probable that this increase induced the member to abandon the order. Twenty-six other members of Bleucher Lodge were suspended with Schoeller for failure to meet this assessment, influenced, we assume, by the largely enhanced assessments. Whatever may have been his motives, he voluntarily relinquished his membership, and the insurance was thus lost to the members of his family.

The judgment should be reversed.

Judgment reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.