Novak & Rehner, Inc., Claimant, *v.* State of New York, Defendant.   (Claim No. 28289.)

Court of Claims, April 16, 1948.

*Samuel L. Greenberg* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Burns F. Barford* and *Douglas S. Rider* of counsel), for defendant.

Gorman, J.   The claimant, formerly known as R. F. Frye & Co., entered into a contract with the State of New York to furnish labor and materials for heating work and service connections at the State Institute of Agriculture on Long Island, Farmingdale, New York.

Two causes of action are alleged in the claim, the first being for the balance admittedly due upon the completion of the contract, and the second being for extra work which claimant alleges was performed over and above the contract requirements at the State's direction.

A motion for severance of the two causes of action was made and granted, and thereafter the first cause of action was tried, and judgment in favor of the claimant was entered and paid, the question of interest thereon being reserved until trial of the second cause of action herein.

Under the contract an existing system of piping, comprising a heating and domestic hot-water distribution and return piping from a central powerhouse to a group of buildings, was to be rebuilt. This system, including about 16,000 feet of pipe, was located within a series of concrete tunnels approximately 6 feet by 6 feet in size, with the pipes in some instances supported over structural I-beams, and at other places enclosed in a tile conduit. In order to install the new piping, it was necessary to disconnect and move the old equipment. Whether the contract contemplated removal to one side of the tunnel, out of the way, or removal from the tunnel and premises, is the point at issue. The State directed the removal from the premises of everything in the tunnel except the new installation and concedes that this was done by claimant in a satisfactory manner, under protest.

The court must look to the contract to determine the intention of the parties. As a general rule the construction of a written instrument is a question of law for the court to determine; but when the language implied is not free from ambiguity, or is equivocal, and its interpretation depends upon the sense in which the words were used, in view of the subject, the parties, and the surrounding circumstances, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact. (*Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.* 122 N. Y. 247, 254.) Words will be given their ordinary meaning unless circumstances show that a different meaning is applicable. Since one who speaks or writes can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved against the former in favor of the latter.

The agreement shows that the parties were cognizant of the significance of distinctions in the word " removed ". In specific language entitled " Removal of Concrete in Tunnel " the words " *Removed* concrete, debris, etc., shall be removed from the premises ", are set forth. Claimant was informed it must remove these items from the premises and made provision therefor

in its bid. Under " General Description " the words " removed from a section of the piping in the tunnels and the piping (which is to be maintained in service) shall be moved to one side of the tunnel out of the way of new stanchions ", are used. Similar provisions with respect to the specific items constituting the instant claim are lacking. It is uncontradicted that removal of the old pipes, pipe supports, stanchions and I-beams by laying them aside in the tunnels would not have interfered with the installation of the new equipment. The State recognized the practicability of such disposition as an alternative method for uninterrupted heating service.

Article 30 of the " General Contract " clauses relates to buildings and site. It directs removal of " all debris and rubbish resulting from his work ", and that the " premises shall be left in a neat, unobstructed condition, and the buildings broom clean, and everything in perfect repair and order." The State relies substantially upon this general provision to sustain its contention, that not only the buildings, but the tunnels are included. If this construction is adopted and this general provision should take precedence over specific provisions, although the rule is generally otherwise, the questions remain as to any conflict with claimant's interpretation that the items comprising the claim are not included and that their removal from the tunnels were not necessary nor contemplated.

" Remove ", in the sense used here, means " To change the location of; to transfer, esp. in order to re-establish. 2. To move by lifting, pushing aside, or the like." (Webster's Collegiate Dictionary [5th ed.].) " Removal ", in a broad sense, is the transfer of a person or thing from one place to another. (Black's Law Dictionary.)

Nowhere in the contract is there a clear, concise and definite statement that the contractor was required to remove from the tunnels and from the premises any of the piping and appurtenances. In the one specification where the language was clear, and the removed concrete and debris were ordered removed from the premises, the claimant included this cost in his contract price. Express statements in preceding covenants support the view that the parties adhered to a contrary intent concerning subsequent covenants which bear no similar specific reference. (*Monroe* v. *Syracuse, Lake Shore & Northern R. R. Co.*, 128 App. Div. 388.)

No testimony of usual correct custom or usage was educed. The failure to do so is a persuasive factor in considering that

the language used in the agreement was devised by the State and the recognized custom of the trade, business or occupation, is admissible. (*Drummond* v. *Norton Co.,* 156 App. Div. 126, 133, affd. 213 N. Y. 670.) Where terms of a written agreement require definition to make its meaning clear and such definition is not given in the writing itself " it is always permissible to give that definition by extrinsic evidence." (*Premium Coal Co.* v. *New Hampshire Fire Ins. Co.,* 265 App. Div. 320, 322.) In the absence of any such proof the contract will be given a strict construction against the State. (*Gillet* v. *Bank of America,* 160 N. Y. 549, 554; *Hoffman* v. *Aetna Fire Ins. Co.,* 32 N. Y. 405; *O'Niel Supply Co.* v. *Petroleum Heat & Power Co.,* 280 N. Y. 50, 55.) The State drew the contract. It is readily apparent that its representatives knew the condition in these tunnels. Whether its failure to require removal from the tunnels and premises in specific language as to these disputed items was oversight, or a mistake, is not essential to this decision. Certainly the responsibility is at its door. Had the removal of the old equipment been clearly included, it is reasonable to infer that the accepted bid would have been sufficiently larger to take care of this extra work. The State does not say such work was estimated or paid.

It is settled law that within certain limits a contractor who is ordered by the proper representatives of the State to do work which he thinks is not called for by the contract may under protest do as directed and subsequently recover damages on the theory of breach of contract. (*Gearty* v. *Mayor of City of New York,* 171 N. Y. 61; *People ex rel. Powers & Mansfield Co.* v. *Schneider,* 191 N. Y. 523; *Borough Constr. Co.* v. *City of New York,* 200 N. Y. 149.)

Reading all of the clauses together and tempering the wording of the general provision by the spirit of its purpose and the wording of the specific provisions, the court concludes on the record in this case, the claimant must prevail. The State has not offered evidence in dispute of the amount paid for unskilled labor in connection with the removal work except it insists a deduction should be made for cost of demolishing the existing tile conduit. With this the court agrees and determines that the undisputed testimony of claimant yields the proper preponderance essential to sustain his estimate of 30% reduction for this item.

An award has been made in the accompanying decision covering both damages for breach of contract and interest.

Let judgment be entered accordingly.