LILLIAN HELLMAN, Respondent-Appellant, *v.* SAMUEL GOLDWYN PRODUCTIONS et al., Appellants-Respondents, et al., Defendant.

First Department, June 19, 1969.

*W. Bernard Richland* of counsel (*Oscar Bernstien* with him on the brief; *O'Dwyer & Bernstien*, attorneys), for respondent-appellant.

*Ambrose Doskow* of counsel (*Rosenman Colin Kaye Petschek Freund & Emil*, attorneys), for appellants-respondents.

STEVENS, P. J.   This is an appeal and a cross appeal from an order entered September 20, 1968, insofar as said order denied plaintiff's motion for summary judgment on the second and third causes of action, and denied the defendants' cross motion for summary judgment dismissing such causes of action.

Plaintiff and Samuel Goldwyn, Inc. entered into a written agreement whereby plaintiff granted Samuel Goldwyn, Inc. all motion picture rights in plaintiff's play '' The Little Foxes.'' Defendant Samuel Goldwyn Productions (Goldwyn) is the successor in interest to Samuel Goldwyn, Inc.   Goldwyn licensed defendant Columbia Broadcasting System, Inc. (CBS) to exhibit by television the motion picture produced and distributed by Samuel Goldwyn, Inc., and such picture was televised over the New York station of CBS.   Plaintiff claims that such exhibition was improper and unauthorized and unjustly enriched defendants at plaintiff's expense.

In the first cause of action, which is not under attack here, plaintiff seeks a declaratory judgment.   In the second and third causes damages, injunctive relief and an accounting are sought, based upon the alleged breach of a written agreement for motion picture exploitation of a work by plaintiff entitled '' The Little Foxes '' (the Property).

The sole issue here involved is whether, by reason of the terms of the contract, defendant Goldwyn was within its rights in licensing the exhibition by CBS of the motion picture production for television.   The answer lies in an examination and analysis of pertinent portions of the contract between the parties.

The agreement, dated January 19, 1940, between plaintiff owner and Samuel Goldwyn, Inc. as purchaser provided, *inter alia,*

'' FIRST: The Owner now sells and grants to the Purchaser all motion picture rights (including all sound, musical and talking motion picture rights) throughout the world in the Property, forever.   Included among the rights so conveyed are the following rights (*but their enumeration shall not be deemed to limit the grant first above made*).   (Emphasis supplied.)   * * * (b) To make, exhibit and market everywhere motion pictures, trailers, sound records (in connection with motion pictures * * * using any methods or devices for such purposes which

are now or hereafter known or used. * * * (e) To *broadcast* the motion picture version or versions of the Property or excerpts or condensations of the Property, including transmissions from recordings and *living actors*, either on sponsored or unsponsored programs, provided, however, that no single *broadcast* shall exceed twenty (20) minutes in duration ". (Emphasis supplied.) There was no right to broadcast serially nor any right in the purchaser to receive a profit from such broadcasts.

Article SEVENTH reserved to the owner " all rights not specifically granted ". The reserved rights included, " *production rights on the spoken stage with living actors appearing in the immediate presence of their audience * * * radio rights unaccompanied by a visual presentation of the play* * * * *television rights direct from living actors* subject to the restriction hereinafter in this Article set forth, and any and all other rights not specifically granted herein." (Emphasis supplied.)

Sound, musical and talking picture rights and the right to exhibit, distribute and exploit same " in any manner or by any method or device now or hereafter known or used " were given the purchaser. Article SEVENTH provided further, " *the right to televise (by broadcast, wire or any other means or methods) motion pictures, sound or silent, based, in whole or in part, on the Property, is included in the motion picture rights* herein granted the Purchaser, *but the right to televise direct from living actors is herein reserved to the Owner.*" (Emphasis supplied.) While the owner was bound not to broadcast the play by radio (or grant the right to another to do so) for a period of 18 months, the owner was granted the right during such period to broadcast or permit a broadcast from or concerning the Property not to exceed 20 minutes where such broadcast was " solely for the advertising and publicity of a stage production of the Property then taking place or scheduled to open in the next four (4) weeks thereafter ". Similarly, as under subdivision (e) of article FIRST where the purchaser was given the right of broadcast limited to 20 minutes for any single broadcast, the owner also was forbidden to profit thereby. The owner and the purchaser each had the right to recoup the expense for such use.

Under article TENTH (subd. II, par. [d]) " gross receipts " included moneys received by the purchaser from television and trailers of the motion pictures, but the purchaser could not make an outright sale (as distinguished from licenses or other arrangements) of television rights in named countries without the owner's written consent. In the event the gross receipts exceeded a certain amount the owner was to receive an additional sum. If the television rights were to be restricted to a

20-minute nonprofit showing, obviously no revenue could be derived therefrom and it would have been pointless to include in "gross receipts" moneys received from television. This provision of the contract would be both unnecessary and meaningless if the contract be interpreted as plaintiff argues. Moreover, the limitation as to outright sales would serve no purpose.

By a copyright assignment, also dated January 19, 1940, plaintiff assigned to Samuel Goldwyn, Inc. all motion picture rights in "The Little Foxes." The assignment was subject in all respects to the agreement. The purchaser was given all rights to televise motion pictures based on the work "and certain radio rights in the motion picture version * * * including transmissions from recordings and *living actors*", no single broadcast to exceed 20 minutes in duration. (Emphasis supplied.) The owner agreed not to dispose of "her reserved television rights" for a period of eight years. This restriction appeared also in article SEVENTH of the agreement.

By reference to the foregoing provisions of the documents certain facts may be established. Plaintiff, the owner, under article FIRST made a general grant of all motion picture rights to the purchaser, with a right to market the same everywhere. It was expressly provided that the enumeration of certain rights was not a limitation as to others.

Subdivision (e) of article FIRST gave the purchaser the right to broadcast motion picture versions, including transmissions from living actors provided such broadcast not exceed 20 minutes and not result in a profit, though purchaser was permitted to receive covering expenses. At first blush this subdivision would seem to be an express limitation on the general right conferred unless it had a particular and discernible purpose. Under article SEVENTH of the agreement there is a similar limitation on the owner as to radio broadcasts, followed by the language "where such broadcast is solely for the advertising and publicity of a stage production of the Property." Article SEVENTH reserved to the plaintiff owner radio rights unaccompanied by a visual presentation of the play, and also reserved to plaintiff production rights on the spoken stage with living actors. Under subdivision (e) of article FIRST the owner permitted the purchaser to broadcast transmissions from living actors subject to the 20-minute limitation. Obviously the yielding of this right was for the purpose of advertising and publicizing the motion picture, and plaintiff so concedes. There was a reciprocal right given the owner to make a radio broadcast not exceeding 20 minutes, solely for advertising and publicity purposes, despite the broad restriction upon the owner not to

broadcast or authorize a broadcast for a period of 18 months following upon the execution of the agreement.

The major, and indeed the only right reserved by the owner as to televising, aside from advertising purposes, was the right to televise direct from living actors. The purchaser was expressly given the right under article SEVENTH to televise motion pictures and to exploit, in any manner or by any method then known or later developed, such motion pictures.

It is a matter of common knowledge, an indisputable fact, that in 1940 radio was far more widespread than television. Accordingly, it would seem that the radio rights were far more valuable. This right plaintiff reserved except insofar as plaintiff granted a limited right for advertising purposes, with the added proviso that the purchaser was not to exercise such rights prior to exhibition of its motion picture in any particular city.

Reading and construing the agreement in its entirety, as we must, we find neither ambiguity nor any irreconcilable conflict. All portions may stand together with meaning (*Johnson* v. *Cheney Bros.*, 277 App. Div. 656, 659). The right to televise and exploit was clearly and expressly given the purchaser. The intent of the parties may be fully gleaned from the documents.

The order appealed from should be modified on the law so as to grant the cross motion of the defendants for summary judgment dismissing the second and third causes of action, and as so modified the order appealed from should be otherwise affirmed, with costs to defendants.

McNALLY, J. (concurring). The contract unambiguously expresses the purpose to grant broad motion picture rights to defendant and to reserve all other rights, particularly stage rights. The grant to defendant excluded radio broadcasting rights, except to advertise the motion picture version for single periods of no more than 20 minutes for the sole purpose of advertising and in no event for profit. Paragraph SEVENTH of the agreement grants to defendant the unlimited right to televise motion pictures, and reserves to plaintiff the right to televise the play, not to be exercised for a period of eight years, and subject to defendant's right of first refusal in the event plaintiff decides to accept a bona fide offer to sell her television rights as to the play. Plaintiff's reserved right to broadcast the play by radio is suspended for the period of 18 months following the release of the first motion picture except that prior to January, 1941 she was entitled to broadcast the play for periods of no more than 20 minutes, for the sole purpose of advertising and in no event prior to 1941 for profit.

McGIVERN, J. (dissenting). I differ from the majority and would affirm the denial of summary judgment to both plaintiff and defendants. Like Special Term I also find ambiguity, conflict and obscurity as to the exact intent of the parties in respect of the purchaser's right to televise the subject property as he has announced. Reference by the majority to the paramount position of radio in 1940, as " a matter of common knowledge," is an interesting historical fact, if true. But the reference is still dehors the instrument, a prop defendants cannot rest upon if they are relying on the four corners of the instrument. Indeed, it is an expedient not necessary when a contract is free of ambiguity, and vagueness. (*Lachs* v. *Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357, 367.) Even the defendants' main brief (p. 18) renders no clarifying service when it states: " The supposed inconsistency between the two provisions can thus be only partial." I too find at least an " arguable " issue as to the limitations intended as between the television and radio broadcasts. This is sufficient to bar summary judgment. (*Sillman* v. *Twentieth Century-Fox*, 3 N Y 2d 395, 404.) Especially this is so when both parties are invoking the same clauses and both moving for summary judgment. In the presence of such obfuscation, " ' the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact.' (*Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.*, 122 N. Y. 247, 254; *Lachs* v. *Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357, 364.) Under such circumstances, summary judgment may not ordinarily be granted." (*Janos* v. *Peck*, 21 A D 2d 529, 536.) Certainly, the issues herein are not so convincingly clear as to warrant summary judgment in favor of one party as against the other. Thus, in my view, Special Term was not incorrect in its disposition and should not be reversed.

EAGER and TILZER, JJ., concur with STEVENS, P. J.; McNALLY, J., concurs in concurring opinion; McGIVERN, J., dissents in dissenting opinion.

Order entered September 20, 1968, modified, on the law, so as to grant the cross motion of the defendants for summary judgment dismissing the second and third causes of action, and as so modified, affirmed, with $50 costs and disbursements to defendants-appellants-respondents.