A. L. HASSARD-SHORT v. HARDISON & BIGGS.

*Contract, Breach of—Measure of Damages—Trial
—Instruction—Harmless Error.*

1. It is not error to refuse to give an instruction where there is no evidence to support it.

2. Where, in the trial of an action for breach of contract to deliver logs it appeared that the breach complained of continued but one day after which defendants resumed the delivery until stopped by plaintiff, it was not error to refuse to instruct the jury that if defendants committed a breach, it was optional with plaintiff to resume the contract on defendants' offer to do so, and that if plaintiff, after the breach, offered to purchase timber of defendants independent of the contract and defendants refused to sell and plaintiff was unable to procure the logs elsewhere, the measure of plaintiffs' damages would not be affected by the offers made by defendants.

HASSARD-SHORT v. HARDISON.

3. Where, in the trial of an action for breach of contract to supply logs to the plaintiff, it appeared that the breach lasted only one day after which the defendants resumed delivery, and there was no evidence that the plaintiff earned or might have earned anything at other employment while his mill was idle, it was harmless error to instruct the jury to deduct from the damages to be awarded plaintiff what he earned or might have earned at other employment during the period of the breach.

4. Where, by the terms of a contract relating to the purchase and sale of logs, the logs were to be paid for "in cash or its equivalent," the vendor was not bound to accept drafts on third parties in payment, and the fact that he did so several times did not compel him to continue to do so.

5. Where the plaintiff in an action for breach of contract declares on a written contract that provides for payment "in cash or its equivalent," he will not be allowed to show a verbal agreement on the part of the vendor to accept drafts on a third party in payment.

CIVIL ACTION, tried before *Armfield, J.,* and a jury, at Fall Term, 1894, of EDGECOMBE Superior Court. There was judgment for the defendants and the plaintiff appealed. The facts are sufficiently stated in the opinion of Associate Justice FURCHES.

*Messrs. John L. Bridgers* and *Don Gilliam*, for plaintiffs (appellants).
*Mr. Jas. E. Moore,* for defendants.

FURCHES, J.: This is an action for damages for an alleged breach of contract in defendants' failing to deliver logs, and for other breaches assigned by plaintiff upon a written contract between the parties.

According to the terms of the contract, defendants were to provide and furnish plaintiff a suitable place at Robersonville to put his mill and to furnish plaintiff, at his mill, not less than ten thousand feet of logs per day of specified size and quality, for which plaintiff, at the end of

each recurring month, was to pay defendants five dollars per thousand, "in cash or its equivalent."

This contract was made in December, 1890 and the parties commenced delivering logs and sawing lumber in March, 1891, which was continued until July, 1891. But before this time the plaintiff had fallen short in his payments, which he then settled by giving his note and mortgage on his mill for $1,100, in part, and paying the balance by a draft on Parmele & Eccleston, to whom plaintiff was selling lumber. Defendants before this had received drafts on Parmele & Eccleston, in part payment for their logs; but having reason, as they thought, to suspect the solvency of Parmele & Eccleston, defendants informed plaintiff that they would take no more of these drafts unless they were secured, and that they would stop delivering logs, unless some arrangement was made to secure them. There was considerable chaffering between the parties about the matter, but the plaintiff failed to provide any additional security and on the 7th day of July defendants stopped the delivery of logs. But defendants failing to get other security, on the next day notified plaintiff that they would continue to deliver the logs on the same terms they had been delivering them, and on the 9th they commenced delivering logs, which they continued until plaintiff notified them that he would not receive them.

It was decided when this case was here before that plaintiff was entitled to recover such damages as he sustained on account of the breach of contract—the failure to deliver logs; but if defendants, on the next day, offered to continue to deliver logs on the same terms they had been delivering them, and commenced to deliver them and continued to do so until plaintiff notified defendants he would not receive them, that plaintiff would only be entitled to such damage as he sustained between the time defendants

stopped delivering the logs and the time when they com-
menced to deliver them again.  114 N. C., 482.  So the
rule of damage in this case has been settled and it only
remains for us to see whether this rule has been observed
and properly enforced.

There are no exceptions to evidence.  There are a num-
ber of special instructions asked by defendant, but they
were all given as asked, or in substance, except 9, 17 and
18, and these we think were properly refused.

As to 9, there was no evidence that plaintiff was at work
on the railroad, during the time defendants failed to deliver
logs.  In fact there was evidence showing that he was not
on the railroad at that time, and it would have been impro-
per to submit a question to the jury without some evidence
to support it.

The 17th cannot be sustained.  It is true that it was
optional with plaintiff after the breach by defendants,
whether he would continue the old contract or make a new
one with defendants.  But this is not the point in the case.
The question is the measure of damage on account of
defendants' failing to deliver logs.  And if they only failed
to deliver for one day, and then continued to deliver until
they were notified by plaintiff that he would no longer
receive them, what difference could it make whether plain-
tiff tried to buy them from others and could not ?  He had
no need for buying from other persons when defendants
were offering to deliver them on the same terms they had
been delivering them.

The 18th prayer cannot be sustained and is disposed of
by what we have said in discussing 17.  This disposes of
the prayers for special instructions and it only remains to
consider his Honor's charge to the jury.

His Honor in charging the jury upon the question of
damage instructed them, among other things, that they

should estimate the value of plaintiff's personal service, as well as profits of mill, in fixing the amount of damage to which plaintiff was entitled; and to deduct expenses of mill, &c., and what plaintiff did earn or might have reasonably earned at other employment. Plaintiff objected to this part of the charge, and if it is liable to objection the plaintiff has failed to show us that he is damaged thereby. It is certain that under this charge plaintiff had the benefit of having his personal services considered by the jury in estimating his damages.

While there is no evidence tending to show the plaintiff did earn anything on that day, or that he might with reasonable diligence have done so,—and, while it may have been improper to submit this proposition to the jury, when there was no evidence,—we fail to see that plaintiff is damaged by this instruction.

The Court further charged the jury that "The construction of a written contract is a matter of law to be passed upon by the Court. And the Court instructs you that it was no part of the original contract, for a breach of which this action is brought, that the defendants should accept the paper of Parmele & Eccleston as the equivalent of money. And the Court further instructs you that, if you believe that the defendants took Parmele & Eccleston's paper at various times during the contract, they were not thereby compelled to continue to do so under the original contract."

The plaintiff complains of this charge and insists that the contract is that plaintiff shall pay defendants for the logs "in cash or its equivalent," and that there was a verbal agreement that defendants would take drafts on Parmele & Eccleston, and that was what "equivalent" in the contract meant.

To be paid "in cash or its equivalent," without further explanation, would mean anything besides money that

defendants might agree to take, as they agreed to take and did take a note and mortgage, or drafts on Parmele & Eccleston. But there is nothing in the written contract fixing these, or anything, as the equivalent of cash.

And if there was any other contract between the parties than the written contract set out at full length in plaintiff's complaint, it is not declared on in this action.

We therefore fail to see the error complained of in his Honor's charge. Indeed, as we think, it was a correct exposition of the law arising upon this contract.

. Counsel for plaintiff seem to lay stress upon a sentence used by the Court in the opinion, 114 N. C., 482, where, in the argument of the case, the Court uses the following language: "If the parties had entered into a new contract identical in terms with the original" &c., and plaintiff says these terms of the renewal of the delivery of logs, were not a renewal of the contract on "identically the same terms", as defendants still refused to receive drafts on Parmele & Eccleston. This language was used by the Court for entirely a different purpose from that for which plaintiff wishes to use it. The Court was there using it to show that plaintiff would still have a right of action; that this renewal of the contract on "identically the same terms as the old contract" would not of itself be a waiver of the breach of the old contract. But how it can be used by plaintiff to show that, because he did not renew the contract on "identically the same terms," this would affect the measure of damage, we fail to see.

Plaintiff's damage does not consist in defendants failing to make a new contract, but because they failed to deliver logs under the old contract. And it has been shown in 114 N. C., 482, as well as in this opinion, that this was for

117—5

the time intervening between the date when defendants
stopped delivery and commenced again. No error.

Affirmed.