W. T. and A. B. HOLLOWELL v. LIFE INSURANCE COMPANY OF VIRGINIA.

(Decided April 17, 1900.)

*Life   Policy—Cancellation—Non-Forfeiture—Payment   of Premium—Former Course of Dealing Between the Parties—Transmission by Mail—Rule of Damage.*

1. While the policy provides for the payment of the premium at Richmond, Va., on July 25, and that "failure to pay premiums at the stipulated period shall make the policy void," and the usual "form of notice," issued some days preceding, directed the insured to remit by postoffice or express money order, or bank draft on Richmond or New York, yet if he had for several years paid his premiums through the mail by checks drawn by a certain business firm endorsed by himself, and the company had accepted this method of payment, then he had a right to rely upon a continuance of this method.

2. Forfeitures are not favored—while the former course of dealings between the parties do not change the contract, it will be regarded by the courts to prevent forfeitures on the ground of unfairness and surprise.

3. The regularity of the mail, a public agency, is such that it is not negligence to rely upon it as a method of transmission, especially as it had been so used in the course of dealings between the parties, and there was no express revocation.

4. A letter, containing the usual check for premium due July 25, deposited in the forenoon of that day, in full time to reach Richmond, in due course of mail by 6 o'clock p. m., but which, for some reason unknown, did not reach its destination until 8 o'clock a. m., July 26, is a sufficient transmission in point of time to prevent a forfeiture, and so far operated as a payment that the company had no right to cancel the policy and return the check, as coming too late.

5. The rule of damages in such case is the aggregate of premiums paid, with interest on each payment from its date.

CIVIL ACTION to recover premiums paid on a life policy of insurance upon the ground that the policy had been wrong-

fully cancelled, tried before *Brown, J.,* at April Term of WAYNE Superior Court.

The plaintiffs were brothers, and one of them, A. B. Hollowell, had taken out a policy of insurance upon his life for the benefit of the other in the defendant company for $1,000. Twenty-nine semi-annual premiums had been paid, usually by endorsed checks of a business firm in Goldsboro, transmitted through the mail to the defendant at Richmond, Va. The thirtieth premium, due July 25, 1898, was transmitted the usual way—by letter containing the endorsed check, deposited in the postoffice at Goldsboro in the forenoon of that day in time by due course of mail to reach Richmond that afternoon at 6 o'clock. For some unknown cause it did not reach its destination until 8 a. m. next morning. Thereupon the defendant company cancelled the policy, and returned the check, claiming a forfeiture on account of the non-payment of the premium *ad diem* as stipulated in the policy.

After finding issues establishing these facts the jury assessed plaintiff's damages at $492.85, which sum included all the payments made with interest from date of each.

The special instructions asked for by defendant and refused, and the instructions given, and excepted to by defendant are stated in the opinion.

From the judgment rendered in accordance with the verdict, the defendant appealed.

*Messrs. Allen & Dortch,* for appellant.
*Messrs. Battle & Mordecai,* for appellee.

CLARK, J. The premium was payable in Richmond, Va., July 25. The policy provides that "failure to pay premiums at the stipulated period shall make the policy void." The jury find upon issues submitted that the mailing of similar

drafts had been the method of payment acquiesced in by the defendant, and that the letter containing a draft to pay the premium was deposited by the plaintiff on the morning of July 25, in the postoffice at Goldsboro, in ample time to reach Richmond, Va., in due course of mail by 6 p. m. the same day. The evidence was that the letter did not in fact reach Richmond till 8 a. m., July 26.

The first exception relied on by appellant is the refusal of the Court below to give the 8th special instruction prayed for, to-wit:

That if the jury find that the defendant notified the plaintiff on or about the 15th day of June, 1898, that the semiannual premium would be due on the 25th day of July, 1898, and directed him to remit by postoffice or express money order, or bank draft on Richmond or New York, then it was the duty of the plaintiff to remit in the manner directed by the defendant, or pay the cash, and if he failed to do one or the other, said premium was not paid on the 25th day of July, 1898, although the plaintiff may have mailed his individual check or the check of H. Weil & Bros., in time to reach the office of the defendant on the 25th day of July, 1898.

The Court charged on this matter as follows:

That if the jury were satisfied by a preponderance of the evidence that the plaintiff had for several years paid his premiums through the mail by checks drawn by H. Weil & Bros., and endorsed by the plaintiff, and the defendant had accepted this method of payment, then the plaintiff had a right to rely upon a continuance of this method, and the jury would answer third issue, "Yes."

In this there was no error. In *Insurance Co. v. Eggleston* 96 U. S., 577, the Court says:

"We have recently, in the case of *Insurance Co. v. Norton,*

96 U. S., 234, shown that forfeitures are not favored in law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. *Any agreement, declaration or course of action on the part of* an insurance company, *which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred,* followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

This line of decisions rests upon the ground not that the course of dealings changes the contract, but that the other party is misled by relying upon it, as he has a right to do until expressly notified that the course of dealings would be discontinued. That was not done by sending the usual "form of notice" which is recited in the prayer for instruction, which form of notice had always been used. In *Hassard Short v. Hardison,* 117 N. C., 60, relied on by the defendant, there was an express notice that the plaintiffs "would take no more of these drafts (which they had been receiving) unless they were secured, and that they would stop delivering logs unless some arrangement was made to secure them." In the present case there was no such notice, but merely the sending of the customary, stereotype formal notice under which the company had been for years accepting drafts or checks, just such as was sent on this occasion. To insist on a forfeiture on that account without express notice would be to mislead the plaintiff, as much as if a trap had been set to catch him.

The next exception insisted upon is the refusal of the Court to give this instruction:

"That if the jury believe the plaintiff deposited a letter containing said premium in the postoffice at Goldsboro in time to be transmitted to Richmond on the 25th day of July, 1898, and said letter was not so transmitted and did not reach Richmond until the 26th day of July, 1898, on account of the negligence of the postoffice department or some employee thereof, then said premium was not paid on the 25th day of July, 1898, and the policy would be forfeited, and jury should answer fifth issue, 'Nothing.' "

Refused, defendant excepted.

The Judge charged as follows:

"And if the jury should be satisfied by a preponderance of the evidence that the plaintiff mailed the letter addressed to the defendant, in Richmond, Va., on the morning of July 25, 1898, in time to have reached Richmond by 6 p. m. on that day, and said letter contained a check of H. Weil & Bros., endorsed by the plaintiff to the defendant, and if they shall further believe that the plaintiff has been in the habit for several years of paying his premiums by said checks, sent by mail, and the defendant has been in the habit of receiving said checks, sent by mail, in payment of the premiums, and the defendant received said check on the morning of July 26, and returned the same to the plaintiff, and cancelled the policy, then said cancellation was wrongful, and the jury will answer the fourth issue, 'Yes.' Defendant excepted."

The notices sent to plaintiff by the defendant directed him to "Remit, etc." "Remit" means "transmit, forward, send." Soule's Synonyms.

In *Whitley v. Insurance Co.*, 71 N. C., 480, it is held that when a premium is delivered according to instruction to the express company to be forwarded, it is a payment that prevents a forfeiture. A case exactly in point is *Kenyon v. Association*, 122 N. Y., 247, which says:

"The distance between the place of residence of the assured and the defendant's home office was such that a payment of assessments by his personal delivery at the latter place evidently was not contemplated, and so far as appears the defendant was satisfied with the method of remittance from him directly to its officer by mail; and such means of transmission may have been within the expectation of the parties in view of their situation. And doing it through the postal service might very well be deemed no less safe and appropriate than any other manner to make payments by means of bank checks. As this had been uniformly the manner of transmitting and accepting payment or the means of payment of assessments adopted by the parties, it may be said that the postal medium of transmission had in some sense become a matter of usage between them, having the nature of an implied agreement to that effect."

This case also meets the objection raised in defendant's brief that in the prior dealings all the checks were received before the premium fell due. "And the conclusion was warranted that by the course of dealing by the defendant in that respect, the assured may fairly and in good faith have been led to suppose that the requirement of the defendant upon him was satisfied by mailing as he did, in his customary manner of doing it, the check for the amount of the last assessment. The proposition was not necessarily overcome by the fact that the other checks were received prior to the time the assured had the right to make payment, although that properly may have been a matter of consideration by the jury upon the question submitted to them."

It will be observed that in the case in New York the premium was not received at all, but the Court held that the company could not, after its course of dealings, forfeit the policy.

By this it is not meant that if the money is lost in the mail, or if the drawee becomes insolvent before presentation of the check or draft, the insurer is discharged from making good the loss on notice, but simply that it is so far a payment that it prevents a forfeiture. A remittance by mail or other method is at the risk of the debtor, unless the creditor expressly, or by a course of dealing, authorized such mode at his risk. *Gurney v. Horne,* 69 Am. Dec., 299; *Tayloe v. Insurance Co.,* 9 Howard (U. S.), 390. But the regularity of the mail, a public agency, is such that it is not negligence to rely upon it, especially when such method of transmission has been previously the course of dealings between the parties, and there was no express revocation of it.

The rule of damages laid down by the Court follows *Lovick v. Insurance Co.,* 110 N. C., 93; *Braswell v. Insurance Co.,* 75 N. C., 8; *Burrus v. Insurance Co.,* 124 N. C.

Affirmed.