HIGDON v. WESTERN UNION TELEGRAPH COMPANY.

(Filed June 2, 1903.)

TELEGRAPHS—*Negligence—Delivery—Delay—Proximate Cause—Contributory Negligence.*

In an action against a telegraph company to recover damages for a delay in delivering a message, where the plaintiff, on receiving the delayed message announcing the death of his mother, at a time when the only train by which he could have reached his mother's residence and attended the funeral was scheduled to leave immediately, telephoned to the railroad station and, on being erroneously informed that the train was on time, made no effort to take it, which he could have done if he had been correctly informed that it was two hours and a half late, the telegraph company, in an action for negligence in delivering the message, was entitled to an instruction that, if plaintiff was misinformed as to the time when the train left, then the negligence of the defendant, if any, was not the proximate cause of plaintiff's injury, and no damage could be assessed on account of plaintiff's failure to reach the funeral.

DOUGLAS, J., dissenting.

ACTION by R. W. Higdon against the Western Union Telegraph Company, heard by Judge *A. L. Coble* and a jury, at October Term, 1902, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appealed.

*Burwell & Cansler,* for the plaintiff.
*Jones & Tillett* and *F. H. Busbee & Son,* for the defendant.

MONTGOMERY, J. The telegram, in which the death of the plaintiff's mother and the time and place of her burial were announced, was delivered to the plaintiff in Charlotte, N. C., at 8:30 a. m. The only train which could have taken him to the place of interment at the hour appointed left Charlotte, by schedule time, at 8:30 a. m.—the same hour of the receipt of the telegram. The plaintiff testified that

the trains were frequently late and that one could not rely on trains being on time. He further said that he asked his partner in business (Pierce) to inquire by telephone at the Southern station, if the train to Atlanta was on time, and on being informed by his partner that he had received an answer that the train was on time, he abandoned any purpose to attend the funeral. There was evidence, uncontradicted, that the train was two hours and a half late on that morning. Under all the evidence, it seems clear that it was the plaintiff's duty to have inquired as to the hours of the running of that train. He felt that it was incumbent on him to do so. He did not make inquiry himself, but got another to do so for him. The evidence does not disclose of whom the inquiry was made by Pierce, and the answer to it, if the uncontradicted evidence was to be believed, conveyed incorrect information. That was evidence of negligence on the part of the plaintiff's agent, and, in law, of his own. On this point the defendant asked the following instruction:

"If the jury find from the evidence that the only train upon which the plaintiff could have gone to attend his mother's funeral left Charlotte more than two hours after the receipt of the telegram announcing her death, and if the jury further find that the plaintiff, in order to ascertain whether he could take the train, relied upon telephone communication, and if by the negligence of any other person, either his partner, who telephoned, or the person to whom he telephoned, the plaintiff was misinformed as to the time when the train left, then the jury are instructed that the negligence of the defendant, if any there was, was not the proximate cause of the plaintiff's injury, and the jury, in answering the sixth issue, are directed not to assess any damages on account of plaintiff's failure to reach the funeral."

His Honor gave in substance an instruction like that requested by plaintiff, but it contained also a statement that any

negligence of the defendant, might be also considered in connection with the information received by Pierce as to the movement of the train. We think the defendant was entitled to the instruction in the form in which it was requested. The defendant's negligence in its failure to deliver the telegram was not connected with the train service and the duty of the plaintiff to make proper inquiry concerning the same. In analogy to our ruling here the case of *Meadows v. W. U. Tel. Co.*, at this term, may be referred to. The court there said: "Had the message been delivered after negligent delay by defendant but still in time for plaintiff to have caught the train, and he failed to do so, this would have been contributory negligence." In the present case there was evidence undisputed, tending to show that the defendant's negligence in not delivering the telegram was not the proximate cause of the plaintiff's failure to attend his mother's funeral and the defendant was entitled to an instruction disconnected with its own negligence on that evidence.

New Trial.

WALKER, J., did not sit.

DOUGLAS, J., dissenting. The opinion of the court seems to be based entirely upon the contributory negligence of the plaintiff, with the burden of proof as to that issue resting, of course, upon the defendant. The plaintiff received the telegram at exactly the time when his train was scheduled to leave, and at once asked his partner to inquire by telephone at the *Southern station* if the train to Atlanta was on time. He was answered that it was on time. What more would a man of reasonable prudence have done? Was it contributory negligence *per se* to depend upon a railroad schedule or upon an answer from a railroad office? Surely railroad neg-

ligence has not gone so far as to raise such a legal presumption.

The defendant asked for an instruction which practically charged the plaintiff out of court, and which I think was too favorable to the defendant even with the qualification added by his Honor, to the effect that "any negligence of the defendant (plaintiff) might be also considered in connection with the information received by Pierce as to the movement of the train" (quoting from opinion). I think the qualification was entirely correct. In applying the rule of "the prudent man" we must consider the condition of the plaintiff, with his knowledge and sources of information. In his distress, and having perhaps some necessary arrangements to make, he asked his partner to telephone to the Southern station. Although not stated in the record, it is evident that Pierce did as requested and that the answer came from the station. What more would ordinary prudence have dictated? It is practically admitted in the opinion that the defendant was negligent. In view of its own negligence and the obvious nature of the telegram, how easy and reasonable it would have been for the defendant to have sent one of its messenger boys to find out whether the train was on time, and to have notified the plaintiff.

In *Hollowell v. Ins. Co.,* 126 N. C., 398, the plaintiff had been in the habit of paying his premium by sending a check to the defendant by mail. One of these checks did not reach the defendant before the day of forfeiture. This court held that the defendant could not cancel the policy upon proof that the plaintiff deposited the letter containing the check in the postoffice in time to reach the defendant in due course of mail before the hour of forfeiture. The court says on page 404: "A remittance by mail or other method is at the risk of the debtor. . . . . But the regularity of the mail, a public agency, is such that it is not negligence to rely upon

it, especially when such method of transmission has been previously the course of dealings between the parties, and there was no express revocation of it." It would seem difficult to entirely separate the regularity of the mails from the regularity of the trains that carry the mails.