Civil action. The following issue was submitted to the jury:
Is the Order of United Commercial Travelers of America, the defendant above named, indebted to W. C. Coile, the plaintiff, as alleged in the complaint; and if so, in what amount? Answer: Yes; $275; interest from 23 March, 1910. *Page 85 
From the judgment rendered, the defendant appealed.
The defendant is a benefit society with an insurance feature, of which the plaintiff was a member. On 26 February, 1910, the plaintiff was suspended because of nonpayment of Assessment No. 99 in the sum of $2. On 23 March, 1910, the plaintiff met with an accident, about which there seems to be no controversy, and he brings this suit to recover the sum to which he would be entitled under the terms of the accident policy.
The plaintiff notified the defendant of the accident by mail on 1 April, 1910. The defendant contends that at the time of the accident the plaintiff was suspended as a member of the order, and was not entitled to its benefits. This is the only point necessary to consider upon this appeal.
The evidence tends to prove that Assessment No. 99 was levied 25 January, 1910, payable on or before 24 February, 1910. Notice was mailed to the plaintiff at his address with remittance blank and an addressed envelope was sent with the notice.
A part of the notice was in the following words: "This notice is mailed from the Supreme office, but your remittance must be made to the secretary of your council, as per inclosed envelope."
The testimony tends to prove that the plaintiff mailed his check at Morristown, Tenn., for Assessment No. 99, on 22 or 23 February, 1910, in a properly addressed and stamped envelope and in ample (106) time to reach the secretary at Asheville before the date when the said Assessment was due. At the time the plaintiff had funds in the bank with which to pay the check. Testimony tends to prove that it was a matter of custom for members of the order to pay their dues with checks duly mailed, and that they were accepted by the secretary in payment. The check was not received by the secretary, and on 26 February, 1910, the plaintiff was suspended because of nonpayment of Assessment No. 99.
Plaintiff did not know the check had not been received until 16 March, 1910, when he saw Wiley, the chief officer of Asheville Council, to whom he gave a duplicate check for said Assessment No. 99, and at the same time told him that he had sent the original check from Morristown to the secretary.
Upon receipt of the duplicate check, Wiley said, "That makes you all right." The plaintiff was then in good health, and it was seven days before the accident. This assessment was paid by the plaintiff and retained *Page 86 
by the defendant. After that the plaintiff was regularly assessed as a member for Assessment No. 100.
Upon the evidence we think his Honor was correct in holding that the plaintiff was entitled to recover, as he had not been lawfully suspended as a member of the order. The defendant not only collected and retained the $2 for Assessment No. 99, for the nonpayment of which he was suspended, but also retained the $2 for Assessment No. 100. The defendant cannot keep the plaintiff's money and escape liability. Matthews v. Insurance Co.,147 N.C. 339; Morgan v. Insurance Co., 42 Wn. 10.
It is true, the plaintiff applied for reinstatement prior to the accident, and it is contended that this was an acknowledgment that he had been properly suspended. We do not think so. The plaintiff applied because he had been notified that he had been suspended, but he had a right also to rely upon the fact that his Assessment No. 99 had been paid and that the company had no right to suspend him.
Assuming that he had been properly suspended, the defendant waived the same by collecting Assessment No. 99 and the subsequent Assessment No. 100, thereby treating the plaintiff in all respects as if he were a member in good standing. Morgan v. Insurance Co., supra.
A course of action on the part of the insurance company which (107) leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. Insurance Co. v. Eggleston, 26 U.S. 577; Insurance Co. v.Norton, 96 U.S. 234.
In sending his check for Assessment 99, the plaintiff conformed to the custom recognized and adopted by the defendant. The regularity of the mail, a public agency, is such that it is not negligence to rely upon it as a method of transmission, especially when it has been so used in the course of dealings between the parties and there has been no express revocation.Hollowell v. Insurance Co., 126 N.C. 398.
The judgment of the Superior Court is
Affirmed.
Cited: Mill Co. v. Webb, 164 N.C. 89; Trust Co. v. Bank, 166 N.C. 117. *Page 87 
(108)