HAZEL GRAY OWENS v. RESERVE LOAN LIFE INSURANCE COMPANY.

(Filed 11 July, 1934.)

1. **Insurance J b—Rights of parties under life insurance policy is to be determined as of date of death of insured.**

   The rights of the parties under a policy of life insurance are to be determined as of the date of the death of the insured, and where insured, a few days before his death, writes insurer requesting an extension of time for payment of premium, and insurer, without knowledge of insured's intervening death, writes insured, after his death, agreeing to grant the request upon insured's signing an extension agreement and the payment of a small interest charge, the rights of the beneficiary under the policy are not affected by the insurer's letter relating to an extension of time the terms of which were not complied with, and the beneficiary's rights under the policy will be determined according to its provisions for paid-up and extended insurance upon nonpayment of an annual premium.

**2. Insurance L b—Held: under terms of policy extended term feature was eliminated by loan against policy in excess of extended term value.**

The policy in suit contained an extension clause providing that upon nonpayment of an annual premium the policy should have a certain paid-up insurance value or extended insurance for a specified term, but that if insured had borrowed on the policy, the paid-up insurance should be reduced in the ratio of the indebtedness to the net value of such paid-up insurance, and that the extended insurance should be for as long a term as the balance, left after deducting the indebtedness from the net value of the extended insurance, would purchase as a net single premium. Upon competent evidence the trial court found that the "net value of the extended insurance" was in a sum less than the amount borrowed on the policy by insured during his lifetime. *Held*, by the terms of the policy there were no funds available for the purchase of paid-up or extended insurance, the loan against the policy being in excess of the net value of the extended insurance provided for in the policy, and the beneficiary was not entitled to recover on the policy under the extension feature thereof.

**3. Evidence J a—**

Parol evidence in explanation of the "net value of extended insurance" as used in a policy of life insurance involved in the case is held competent under the rule that parol evidence is competent to explain technical words as used in particular trades or vocations.

**4. Insurance L c—Beneficiary may not recover cash surrender value of policy payable according to its terms to insured upon his request.**

Where a policy of life insurance has, as of the date of insured's death, a certain cash or surrender value, which, according to the terms of the policy, is payable to insured upon his request and valid surrender of the policy, the beneficiary therein may not recover such cash or surrender value where it appears that insured, prior to his death, made no request therefor and did not surrender the policy, nor may a letter written by insured a few days before his death, requesting an extension of time for payment of a premium, be construed as a request for the cash or surrender value of the policy.

CLARKSON, J., dissenting.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Frizzelle, J.*, at February Term, 1933, of WILSON.

By agreement of the parties the trial judge heard the evidence, found the facts and rendered judgment thereon.

The facts so found pertinent to a decision of the questions of law involved, are as follows:

On 22 November, 1923, the defendant issued and delivered to John Elverson Owens a certain policy of life insurance by the terms of which it agreed to pay $1,000 to Hazel Gray Owens, the plaintiff in this action, upon receipt of due proof of the death of the insured; subject, however,

to the conditions set forth in the policy. The quarterly premium required by said policy was $7.71 and the annual premium was $23.63. The policy contained a table of certain guaranteed values. This table shows that if the policy had been in force eight years it had a cash or loan value of $93.00, a paid-up insurance value of $208.00, and an extended insurance feature of eight years and one month. The policy further provided: "In the event of no indebtedness hereon, the values in the above table would apply. Any indebtedness hereon may be paid in cash and the values in the table will then apply, or if not so paid, the cash loan values will be reduced by the amount of the indebtedness; the paid-up insurance will be reduced in the ratio of the indebtedness to the net value of such paid-up insurance; and the extended insurance shall be for as long a term as the balance, left after deducting the indebtedness from the net value of the extended insurance as shown in the table, will purchase as a net single premium," etc.

Another clause in the policy was as follows: "At the expiration of three years from the date hereof, if any subsequent premium be not paid when due, the company will, without action on the part of the insured, extend this policy as nonparticipating term insurance, without loan values, for the term provided on the table of guaranteed values opposite the number of years for which annual premiums have been paid."

Owens, the insured, paid the annual premiums for the years 1923 to 1930, both inclusive. The ninth annual premium fell due and payable on 22 November, 1931. The usual grace period was allowed by the policy and due notice was given by the company of the date when the premium was payable. . . . On 13 November, 1930, the said John Elverson Owens obtained a loan on said policy, pursuant to the provisions thereof from the defendant, in the sum of $85.32. The interest on said loan was paid to 22 November, 1931. Said loan was outstanding at the time of the death of the insured. On 21 December, 1931, and during the grace period the insured wrote a letter to the defendant stating: "It will be impossible to pay the amount due on my policy at present. Please make arrangements for me to have ninety more days in which to pay this." Seven days later, to wit, on 28 December, 1931, the insured died. On 29 December, 1931, and after the death of the insured, the defendant, not having heard of the death, wrote a letter to John Elverson Owens, stating: "We shall be glad to extend the time for payment of premium as you requested. In order to secure the extension you are required to sign the enclosed agreement and return promptly with cash of ten cents for interest. If the premium is settled according to these terms, your policy loan will be extended to 22 February, 1932, at which time it will be $5.26." The said letter

enclosed a premium extension agreement to be signed by the insured, but, of course, on account of the death, such agreement was never signed. On 21 January, 1932, the defendant wrote the clerk of the Superior Court of Wilson County, stating, among other things, "The cash value of the policy at the end of the eighth year is $93.00, and Mr. Owens' estate may surrender the policy for this amount, less the loan of $86.32, the surrender to net $6.68 in cash. Upon receipt of the enclosed release completed by the executor or administrator of the estate of John Elverson Owens, accompanied by the policy, we will cancel and return the loan agreement of $86.32 with check for $6.68 to balance." The said sum of $6.68, if available for the purchase of extended insurance, would have been sufficient to purchase extended insurance beyond the date of the death of John Elverson Owens.

The net "value of extended insurance" for the period of eight years and one month as set forth in the "table of guaranteed values," in the policy, for the eighth policy year, amounted to $82.27.

There was evidence that the net value or money value of a period of extended insurance of eight years and one month under the policy based upon the American Experience Table of Mortality at $3\frac{1}{2}$ per cent interest, on the life of the insured, who was born on 12 September, 1887, and whose nearest birthday at the date of issue of said policy was 36 years, was $82.27. The policy provided that "all surrender values contained therein are based on the American Experience Table of Mortality with $3\frac{1}{2}$ per cent interest," etc.

Upon the foregoing facts the trial judge was of the opinion that the plaintiff was not entitled to recover and she appealed.

*Finch, Rand & Finch and W. A. Lucas for plaintiff.*
*Connor & Hill and Frank G. West for defendant.*

BROGDEN, J. The insured failed to pay the ninth premium due on 22 November, 1931. On 21 December, 1931, he wrote a letter to the company, stating that it would be impossible to pay the premium at present and requesting an extension of time for ninety days in which to make the payment. One day after his death, the company, not knowing of the death, wrote a letter, agreeing to extend the time upon certain conditions. Manifestly, the rights of the parties are to be determined at the time of the death of the insured. What then, was the status of the parties at the time of the death of the insured? The insured had paid eight premiums on the policy and the ninth premium fell due on 22 November, 1931. Consequently, such premium was not paid either when due or within the grace period prescribed in the policy. The insured had borrowed the sum of $86.32 on the policy, and at the

end of the eighth policy year the loan value was $93.00, and at the end of such year there was an extension provision of eight years and one month. The policy provided that at any time "after three annual premiums have been paid hereon . . . the company will within ninety days after receipt of written request by the insured, with a full and valid surrender of this policy and all claims hereunder, pay a cash surrender value as indicated in the table of guaranteed values," etc. Hence, if the loan of $86.32 be subtracted from the cash of the loan value of the policy, to wit, the sum of $93.00, there would be a balance of $6.68. However, the policy provided that this cash surrender value was payable only "after receipt of written request by the insured, with a full and valid surrender of this policy and all claims hereunder." The letter written by the insured on 21 December, 1931, is in no sense a request for the payment of the cash value as contemplated by the plain terms of the contract. It was a request for time indulgence and no more.

The plaintiff, however, asserts that at the time of his death the insured had an extension contract extending the life of the policy for eight years and one month. The extension clause was as follows: "At the expiration of three years from the date hereof, if any subsequent premium be not paid when due, the company will, without action on the part of the insured, extend this policy . . . for the term provided in the table of guaranteed values opposite the number of years for which annual premiums have been paid." But the insured had borrowed $86.32 upon the policy, and it was provided in the contract that the "extended insurance shall be for as long a term as the balance left after deducting the indebtedness from the net value of the extended insurance as shown in the table, will purchase as a net single premium." The indebtedness is known. It is $86.32. But what is "the net value of the extended insurance" as shown in the table? There was evidence, and the judge so found, that the "net value of the extended insurance" was $82.27. Therefore, as the indebtedness was in excess of "the net value of the extended insurance," the extension feature disappears from the case.

The plaintiff excepted to the testimony upon which the finding as to the "net value of the extended insurance," was based, but it is generally accepted principle of law that parol evidence is admissible to explain technical terms. The principle was expressed in *Neal v. Ferry Co.,* 166 N. C., 563, 82 S. E., 878, as follows: "It is well settled that where words or expressions are used in a written contract, which have in particular trades or vocations a known technical meaning, parol evidence is competent to inform the court and jury as to the exact meaning of such expression in that particular trade or vocation, and

it is for the jury to hear the evidence and give effect to such expression as they may find their meaning to be."

The cash surrender value of the policy became effective only upon the "written request" of the insured and the "valid surrender of the policy." Hence, as this provision has never been complied with, the plaintiff as beneficiary, is not entitled to recover the cash or loan value of $6.68.

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.

CLARKSON, J., dissenting: This is a civil action brought by plaintiff against defendant to recover on a policy of life insurance for one thousand dollars, the judgment of nonsuit or dismissal being upon an agreed statement of facts by the court below. On 22 November, 1923, the Reserve Loan Life Insurance Company, defendant in this action, issued to John Elverson Owens a contract or policy of life insurance by the terms of which it agreed to pay Hazel Gray Owens, the insured's young daughter and the plaintiff in this action, one thousand dollars, upon receipt of due proof of the death of said John Elverson Owens, subject to the conditions set forth in said insurance policy. Said policy was issued in consideration of the payment in advance of $23.63 annually, or if paid quarterly the quarterly premium was $7.71. The premiums for the years 1923 to 1930, both inclusive, were paid to said company, but the premium due and payable on 22 November, 1931, being the ninth annual premium, was not paid either on its due date or within the days of grace allowed by the policy, *but on 21 December, 1931, within the period of the thirty-one days of grace, the said John Elverson Owens wrote a letter to the defendant wherein he stated:* "It will be impossible to pay amount due on my policy at present. Please make arrangements for me to have ninety more days in which to pay this."

In response to said letter from said Owens, the defendant, on 29 December, 1931, wrote a letter in which it stated that it would be glad to extend the time for the payment of the premium, upon his signing an extension agreement and enclosing ten cents cash for payment of interest. At the time of the writing of said letter by said defendant company, the said John Elverson Owens, unknown to the defendant, was dead and the form of the extension agreement was never executed, nor was the item of 10 cents for interest ever paid.

On 13 November, 1930, the said John Elverson Owens had obtained a loan on said policy, pursuant to the provisions thereof, from the defendant in the sum of $86.32, the interest on said loan being paid to

22 November, 1931, the said loan being unpaid at the time of the death of said John Elverson Owens. According to the terms of the policy, its cash or loan value at the time the loan was executed, was $93.00, the difference between the loan and its cash or loan value being $6.68. The defendant wrote the clerk of Wilson Superior Court, on 21 January, 1932, that this was the cash value due on the policy.

The said policy of insurance issued by said defendant to the said John Elverson Owens contained provisions by which at any time after two years from its date, while the policy was in force, the insured might upon written request borrow certain sums upon the sole security of the policy, the loan value of said policy according to the number of years as set forth in a table of guaranteed values contained therein, being $93.00 the policy also contained a provision by which at any time after three annual premiums had been paid the insured might request a full and valid surrender of the policy and in exchange therefor obtain cash in the amount set forth in said policy in table of guaranteed values, according to the number of years for which the policy had been carried, the cash value, as thus set forth, being $93.00 at the time the said loan was made. It was further provided that the said company, upon written request, after three annual premiums had been paid, might convert the said policy into paid-up nonparticipating insurance for the amount shown in the table of guaranteed values opposite the years for which annual premiums had been paid. It was further provided that at the expiration of three years, if any subsequent premium be not paid when due, the company would without action on the part of the insured, extend the policy as nonparticipating term insurance, without loan value, for the term provided in the table of guaranteed values opposite the number of years for which annual premiums had been paid.

From a judgment of nonsuit in the court below, the plaintiff through her general guardian, A. C. Owens, appealed to the Supreme Court.

I think there was error in the judgment of the court below, upon the findings of fact "that the plaintiff take nothing by her action and the defendant go without day and recover the cost."

Within the period of thirty-one days grace set forth in the policy of insurance during which it would remain in force, the insured wrote the defendant a letter in which he requested that arrangements be made for him to have ninety more days in which to pay the premium then due on said policy. At the time he wrote the letter, there was a cash or loan value of $6.68 to the credit of the policy in the hands of the defendant. This distinguishes the present case from that of *Sexton v. Insurance Co.,* 160 N. C., 597, as in that case the insured had borrowed the full amount. In the instant case, he lacked $6.68 of borrowing the full cash or loan value.

While the policy carried a provision for extending the policy as nonparticipating term insurance, in the event of failure to pay the premium when due, this was to be done "without action on the part of the insured." The other provisions as to the loan or cash value or paid-up insurance were optional with the insured, and were not to become effective without a written request from the insured. This written request was given. It is clear from the agreed statement of facts that the insured did not make a request to exercise any of these options nor was it his intention to permit the defendant to put into operation the provision relative to extended term insurance.

The defendant recognized the intention of the insured to continue his insurance by replying that it would be glad to extend the time for payment of premium, *"as you requested."* However, the insured had died in the meantime, and the defendant contends that the status of the parties was determined at that time. I think not.

It appears from the finding of facts in this case that the insured undertook in good faith to prevent a forfeiture of his policy. It is well said in *Lincoln National Life Insurance Co. v. Bastian,* 31 Fed. (2d), 859, at p. 861: "Courts never favor forfeitures. This rule applies in a case where the insurer attempts to escape liability upon the theory of a forfeiture for nonpayment of premium. So that very slight evidence will suffice to support a finding that a waiver of a right of forfeiture was made."

The fact that the insured had to his credit with the defendant a cash or loan value of $6.68, the further fact that within the thirty-one days of grace allowed by the policy of insurance he requested that arrangements be made to give ninety more days in which to pay his premium, and the further fact that, although the letter was written after the death of the deceased, the defendant acquiesced in the request that arrangements be made to extend the time for payment of the premium, all of these facts bring the instant fact situation within the principle stated in *Hollowell v. Insurance Co.,* 126 N. C., 398, and approved in *Coile v. Commercial Travelers,* 161 N. C., 104, 47 A. L. R., at p. 886.

In *Hollowell v. Insurance Co., supra,* the plaintiff (the insured) had been in the habit for several years of paying his premiums by mail, and the insurer had been in the habit of accepting payments so made, the deposit in the mail of a letter containing a check for the amount of a premium addressed to the insurer, in time to have reached the insurer by the date it was due, is a payment sufficient to prevent forfeiture, notwithstanding it was not received until the day after it was due, the Court saying: "By this it is not meant that if the money is lost in the mail, or if the drawee becomes insolvent before presentation of the check or draft, the insurer is discharged from making good

the loss on notice, but simply that it is so far a payment that it prevents a forfeiture." 47 A. L. R., at p. 888.

While in the instant case it does not appear that the custom of paying premiums by mail had extended over a period of years, it does appear that the defendant *acquiesced* in the request that arrangements be made for the 'insured to have ninety days in which to make payment. Therefore, the status between the insured and the insurer, at the time of the death of the former, was fixed by the submission of the request for extension of the time in which to make payments, and the subsequent acquiescence by the defendant, it being estopped by its dealings with the insured from insisting on a forfeiture of the policy. I think its course of dealings with the insured brings it within the principle approved in *Insurance Co. v. Eggleston,* 96 U. S., at p. 577, quoted with approval in *Hollowell v. Insurance Co., supra,* the quotation is as follows: "We have recently, in the case of *Insurance Co. v. Norton,* 96 U. S., 234, shown that forfeitures are not favored in law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. *Any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto, a forfeiture of his policy will not be incurred,* followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, *though it might be claimed under the express letter of the contract.* The company is thereby estopped from enforcing the forfeiture."

A court will not look with favor on the forfeiture of $1,000 when the defendant had $6.68 on hand sufficient to purchase extended insurance beyond the death of the policyholder who in accordance with the terms of the policy made the request for extension before his death. Although the letter from the company after his death says, "we shall be glad to extend the time for payment of your premium as you requested," etc., it is presumed that when the company received the letter of the policyholder it would extend the time and acquiesced in the extension and did subsequently grant the extension.

While, as we have said, the status between the insured and the insurer was fixed by the death of the former, the subsequent conduct of the defendant also estops it from denying that there was to the credit of the insured with the defendant, a cash or loan value, for the defendant, upon learning of his death, wrote the clerk of the Superior Court in Wilson County, offering to remit $6.68, which was said to be the cash surrender value. This, as we have said, would have been more than enough to pay the premium on the policy to extend its validity until 22 February, 1932, beyond the time of the death of the deceased.

McGRAW *v.* R. R.

This case is distinguishable from *Williams v. Union Central Life Ins. Co.,* U. S. Supreme Court Law Edition, Advance Opinions, Vol. 78, No. 6, published 5 February, 1934. In the present case, the insured made the request and the $6.68 loan value was applied by the insurer on the extension period and the insurer acquiesced in the request. This case is unlike *Sellars v. Insurance Co.,* 205 N. C., 355; *Harden v. Insurance Co., ante,* 230. Succinctly, the cash loan value of the policy was $93.00. The amount borrowed was $86.32, leaving the defendant owing John Elverson Owens $6.68 on the borrowing value sufficiently admitted by defendant to extend the insurance which it was requested to do and did do in its letter. $1,000 is forfeited with defendant having sufficient money in its pocket to pay the premium. Defendant says it has the money, but in the wrong pocket.

It is just such technical forfeitures as this that have enriched certain insurance companies and in many cases confiscated the earnings of the poor. The courts should sooner or later under the general welfare clause and its equitable jurisdiction wipe out such technical forfeitures as contrary to good morals.

> "That for ways that are dark
> And for tricks that are vain,
> The heathen Chinee is peculiar."
> —Bret Harte.

For the reasons given I think the judgment in the court below should be reversed.