14585

## BROWN v. PILOT LIFE INS. CO.

(194 S. E. 121)

*Messrs. Epps & Epps,* for appellant, cite: ▮

*Mr. Raymon Schwartz,* for respondent, cites: ▮

December 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This case turns upon the question of whether or not the balance of an insurance premium, amounting to $11.22, due August 14, 1935, on the policy in suit, was paid within due time. The defendant, alleging that it was not so paid, contends that the policy lapsed for nonpayment, and may not be reinstated without satisfactory evidence of insurability on the part of the insured. The action was commenced by the plaintiff against the defendant on March 26, 1936, to have the Court adjudge the policy issued by the appellant, covering the life of the respondent, in full force and effect. The policy carried also what is known as a permanent and total disability clause.

The cause was referred to the Master for Sumter County, who found for the plaintiff, and recommended that the Court declare the policy in full force. Upon appeal to the Circuit Court this report was confirmed in a formal order. The matter now comes before us upon exceptions to this order.

The policy in question specifically provided that "Premiums are payable at the home office of the company, but may be paid on or before the dates due to the company's agent in exchange for the company's official receipt, signed by one of the officers referred to below, and countersigned by the agent."

The testimony tends to prove that the insured sent his check for the amount of the premium to the office of the local agent in the City of Sumter, on August 14, 1935, about 4 o'clock in the afternoon, but there was no one in the office to receive the payment at that time. The check was carried to the local office by the son of the insured, who found the door locked, whereupon he returned the check to his father.

About 8:30 o'clock p. m., on the same day, this check was mailed by the plaintiff in a mail box near his home, in the City of Sumter, sealed in an envelope, properly stamped, and addressed to the defendant's local agent in that city. This letter containing the premium check was not received by the local agent until August 21, 1935, seven days after its mailing. The testimony is silent as to the date of the postmark on the envelope, but the check was dated August 14, 1935, and was made payable to the local agent. On August 23, 1935, the respondent received a letter from the defendant, notifying him that his policy was canceled for nonpayment of the premium due on August 14th.

The testimony shows that the office of the local agent in Sumter was open daily from 8:30 o'clock a. m., to 12 o'clock m., and from 1.30 o'clock p. m., to 3:45 o'clock p. m., but it is inferable from the testimony that this office was closed for the day, and locked, at the time the plaintiff sent the premium check in question by his son. The following testimony of Mrs. Monsen, bookkeeper and clerk in the office of the local agent, shows the custom and usage followed by the defendant in accepting insurance premiums from policyholders in Sumter:

"Q. A person then could not pay his premium at five in the afternoon or four-thirty of the last day and be in the grace period, could he? A. If he went to the office and nobody was there, he could not. He could drop it in the postoffice.

"Q. It was dropped in the postoffice, you heard that? A. Yes, sir.

"Q. As a matter of fact, at four-ten on an afternoon in question, where it was the last day in question, you were not at the office to take the premium? A. I was not at the office.

"Q. Of course, if it was mailed in a letter box, it would be the same as delivery to you? A. That is what they customarily do.

"Q. You have received money on the day after the premium fell due, marked on the last day of grace, and you accepted those on the following day as payment when due? A. Yes, sir.

"Q. For instance, if a person mailed a check on the 14th day of August and the last day for paying that premium is the 14th day of August, and it is not received until the 15th, is it your custom to accept it as payment as of the 14th? A. If the letter is postmarked that date and we get it the next day, we can accept it.

"Q. If this particular check had been placed in an envelope on the 14th and mailed, and was stamped at the postoffice and you received it on the morning, of the 15th, would you have accepted it? A. I would accept it, certainly, and put it collected as of the 14th.  *  *  *

"Q. Does the company know you post-date it on your books and that you received the check on the 15th? A. If it is post-marked on the last day of grace, we can accept it. The company will accept it, if we get it the day after it is postmarked."

In addition to this testimony showing custom and usage, this appears from a letter introduced in evidence, written by

the local agent to the defendant: "We held the policy open until the 17th, and sent it in for cancellation." As further tending to show the custom which prevailed between the parties with reference to the payment of premiums, the plaintiff testified that he sometimes made the premium checks payable to B. L. Williams, agent, and sometimes payable to Pilot Life Insurance Company, "but I mailed them to Mr. Williams irrespective of how made out." And Mr. Williams, the local agent, testified that "during the day of the 14th I called Mr. Brown over the telephone and told him his insurance was due and he said he would mail or send a check that day." There is also evidence in the record showing other instances of delay and delinquency on the part of the local postal employees in collecting letters from the drop letter mail boxes in Sumter.

As heretofore stated, the prime question presented is whether or not the Circuit Court erred in holding that the premium check was paid within due time.

We may say in passing that the check in question was good, was presented by the defendant for payment at the bank upon which it was drawn, was cashed, and charged against the plaintiff's account; but into these subsequent events we need not go.

It is a rule of general acceptation that in the absence of circumstances from which it can be inferred that the insurer has authorized, requested, or acquiesced in the payment of premiums by mail, that the deposit of insurance dues or premiums in the mail is not such a payment as would prevent a forfeiture of the policy. The mails are, of course, the medium usually adopted for the transmission of premiums, and there is no doubt but that premiums may be so paid, if it is so agreed, or if the course of dealing between the parties warrants such a mode. Couch on Insurance, Vol. 3, § 601; *Illinois L. Ins. Co. v. McKay*, 6 Ga. App., 285, 64 S. E., 1131; *Hollowell v. Life Insurance Company of Virginia*, 126 N. C., 398, 35 S. E., 616.

It has also been held, and we think correctly so, that under policies requiring payment at a certain place by a certain time under penalty of forfeiture, a deposit thereof in the mail, properly addressed, and in time, according to the usual course of mail, to reach the prescribed place by the time it is due, will prevent a forfeiture if the insurer has requested, authorized, or acquiesced in the sending of premiums by mail. And payment in this wise has been held to be good, even though the check for the premium due does not in fact reach its destination at all, or until after the due date, and notwithstanding time be regarded as the essence of the contract. *Kenyon v. Knights Templar & M. M. Aid Ass'n,* 122 N. Y., 247, 25 N. E., 299; *Hollowell v. Life Insurance Company of Virginia, supra; Coile v. Order of United Commercial Travelers of America,* 161 N. C., 104, 76 S. E., 622, 623.

The testimony in the case at bar shows that the letter containing the premium check was not dropped into the letter box until about 8:30 o'clock p. m., on the night of the 14th, when it was too late for any mail to be taken up until the next day; but it is likewise shown that if this check had been received by the local agent on the next day, which was the 15th, or even up to and including the 17th, it would have been deemed to have been received in time to prevent a forfeiture.

As was said in *Coile v. Order of United Commercial Travelers of America, supra:*

"In sending his check for assessment 99, the plaintiff conformed to the custom recognized and adopted by the defendant. The regularity of the mail, a public agency, is such that it is not negligence to rely upon it as a method of transmission, especially when it has been so used in the course of dealings between the parties, and there has been no express revocation. *Hollowell v. Insurance Co.,* 126 N. C., 398, 35 S. E., 616."

Undoubtedly, in the case at bar the plaintiff conformed to the custom recognized and adopted by the defendant.

It has become hackneyed and trite for Courts to say that "forfeitures are not favored in law." But we think the statement is peculiarly applicable here. It is clearly inferable from the testimony, some of which we have quoted, that it was the custom and practice, not only of the plaintiff, but of other policyholders of the defendant, to adopt the postal facilities as a medium of transmitting to the local agent premiums due upon policies. In the case at bar, the plaintiff had the unquestioned right, until 12 o'clock p. m., of August 14, 1935, to pay the premium due upon his policy. He sent the premium in question to the local office about 4 o'clock p. m., but the office was closed for the day. He thereupon adopted the alternate method sanctioned by custom and usage and deposited the check for the premium in an envelope, duly stamped, and properly addressed to the local agent, in the mail box near his home, about 8:30 p. m. We think it would be highly inequitable under these circumstances to say that the premium was not paid within due time, even though, for some unexplained reason, it was not received by the local agent until August 21st. It therefore follows that the policy did not lapse for the non-payment of the premium, and should not have been canceled.

As was said in *Hollowell v. Life Insurance Company of Virginia, supra,* this does not mean that if the money is lost in the mail the insured is discharged from making good the loss on notice, but simply that it is so far a payment that it prevents a forfeiture.

The record shows that the parties to this action have agreed that it was not necessary for the assured to continue to tender subsequent premiums, as they fell due, since the law does not require one to do a vain and futile thing. Therefore the sole question to be determined in this case is whether the Court will sanction a forfeiture under the

facts narrated. As heretofore stated in our opinion, the insurance company was not warranted in declaring a forfeiture.

Under circumstances which we need not discuss, the plaintiff's check for $11.22 was cashed by the defendant, but the defendant later mailed to the plaintiff its own check in the same amount, which check is apparently now in possession of the plaintiff. In order that the parties to this litigation may be definitely advised as to what steps should be taken toward reinstating the policy, it is ordered that the defendant company do notify the plaintiff of the exact amount due under said policy by way of premiums since August 14, 1935 (the plaintiff returning to the defendant company its check of $11.22 to cover the premium due on August 14, 1935), and that the plaintiff to have ten days after receipt of such notice of the amount due in which to make payment of the said premiums which have accrued to that date, together with interest thereon at the legal rate.

The exceptions are overruled.

Judgment affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate on account of illness.